Gerald E. SMALLWOOD, Appellee,

v.

UNITED AIR LINES, INC., Appellant.

Gerald E. SMALLWOOD, Appellant,

v.

UNITED AIR LINES, INC., Appellee.

Nos. 82–2115, 82–2116.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 1, 1983.

Decided Feb. 28, 1984.

Herbert Prashker, New York City (William E. Hickman, Poletti, Freidin, Prashker & Gartner, New York City, on brief), for appellant in No. 82–2115, and for appellee in No. 82–2116.

Wyatt B. Durrette, Jr., Fairfax, Va. (Michael C. Montavon, Joyce A. Naumann, Roeder, Durrette & Davenport, P.C., Fairfax, Va., on brief), for appellee in No. 82–2115 and for appellant in No. 82–2116.

Before RUSSELL, HALL and MURNAGHAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is an action under the Age Discrimination in Employment Act (ADEA)[1] in which the plaintiff (Smallwood) challenges the refusal of the defendant United Air Lines, Inc. (United) to process his application for employment as a flight officer under a rule providing that an application for employment as a flight officer would not be processed if the applicant were over 35 years of age. The plaintiff was shown on his application to be 48 years of age. At trial of the action the defendant sought to defend against the charge of a statutory violation by asserting, first, that its rule under which it refused to process plaintiff's application met the requirements of a bona fide occupational qualification (BFOQ) within the Act,[2] and, second, that the plaintiff would not have been hired as a flight officer even if there had been no age discrimination. The district judge, however, confined the trial to the validity of the BFOQ claim and refused to permit the defendant to develop fully, or to rule on the defendant's second defense.[3] At the conclusion of the testimony, the district judge upheld the validity of the BFOQ defense and ordered the complaint dismissed. On appeal by the plaintiff, we reversed, finding the defendant's rule not to be a valid bona fide occupational qualification.[4] Since the district court had not ruled on defendant's second defense, we remanded the cause for trial of that issue, *i.e.,* whether the defendant would not have hired the plaintiff if there had been no age discrimination. *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303 (4th Cir.1981).

After the remand and in preparation for the second trial, the parties engaged in discovery. Because of the direction of such discovery as pursued by the defendant, the plaintiff filed a motion for clarification of issues. In support of his motion, the plaintiff argued 1) that the earlier decision had resolved all issues in the case, including the defense that the defendant would not have

---

1. 29 U.S.C. § 621, *et seq.*

2. 29 U.S.C. § 623(f)(1).

3. *See Smith v. Secretary of the Navy,* 659 F.2d 1113, 1119–20 (D.C.Cir.1981); *Day v. Mathews,* 530 F.2d 1083, 1084–85 (D.C.Cir.1976).

4. It is odd that in *Murnane v. American Airlines, Inc.,* 482 F.Supp. 135 (D.C.D.1979), *aff'd.,* 667 F.2d 98 (D.C.Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982), on which the plaintiff relies on this appeal, the court held that a rule similar to that involved in this case was a valid BFOQ.

hired the plaintiff if there had been no age discrimination; and 2) that, even if that latter issue were still relevant on remand, the defendant was strictly restricted in proof of such defense to evidence on "matters arising subsequent to [the first] trial." During argument on the motion, the district judge remarked that the Court of Appeals' opinion in the first appeal was "almost a direction for [him] to consider aspects of the case which [he] didn't consider" and that "the prudent way to proceed [was] to allow the defendant to introduce this additional [evidence which] is apparently not a great deal of evidence." He opined that if the case went back to the Court of Appeals the record would thereby be "in a position that [the Court of Appeals] can decide [the case] and not send it back here for any more testimony." For this reason, he said, it was proper "to get all that has to be gotten or is proffered by either side into this record now, so that we can decide this case finally, if possible." After the hearing, the district judge denied the motion and, in the exercise of his discretion allowed "the reopening of the record and receipt of evidence on the question whether plaintiff would have been hired by the defendant regardless of age." The cause thereafter proceeded to trial. Both parties offered evidence and at the conclusion of the trial, the district judge, by oral decision, later confirmed by a formal judgment with a later "clarification," found for the plaintiff.

In his oral decision, the district judge began by expressing doubt that "the wouldn't-have-hired-anyway defense" was "available as a defense" in this case. With-

out indicating the reason for such doubt, he proceeded, however, to find that such defense was "available as a defense" but that the burden of establishing such defense by the preponderance of the evidence rested on the defendant.[5] He added, however, that in considering evidence of the plaintiff's alleged fraud upon his former employer [which was the defense asserted by the defendant], "it's true that—or at least there is some force to the argument that only those facts available to the defendant as of the time of the rejection of the plaintiff's application ought to be considered" but that if any evidence after the time of the rejection of plaintiff's application were deemed "admissible, it seems to me the Court is entitled to be and should be, skeptical of after-the-fact decisions as to what the defendant would have done had it known what it knows now." It followed with a criticism of defendant's action, saying that, if there had been no age discrimination, the defendant would at the time of the application have made "suitable inquiry . . . whether or not [plaintiff's] activity with his former employer was such that it [the defendant] would [have been] warrant[ed] . . . [in] rejecting him as an applicant" and whether the defendant would have "interviewed [the plaintiff] . . . so that he could have at least . . . given his side of the story." Though he recognized, as the foregoing comments demonstrated, that the critical issue on remand was the plaintiff's "activity with his former [airline] employer" which caused such employer to fire the plaintiff, the district judge gave no explicit

---

**5.** As the Court observed in *Cohen v. West Haven Bd. of Police Com'rs,* 638 F.2d 496, 502, n. 10 (2d Cir.1980) there is some disagreement among the Circuits on the burden borne by the defendant in connection with this defense. We held in *Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 636 (4th Cir.), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979), that the proper burden was that of the preponderance of the evidence. The Fifth and District of Columbia Circuits, however, had, in *Davis v. Board of School Com'rs of Mobile County,* 600 F.2d 470, 474 (5th Cir.1979), *modified on other grounds,* 616 F.2d 893 (1980), and *Day v. Mathews,* 530 F.2d 1083, 1085 (D.C.Cir.1976), opted

for the "clear and convincing" burden of proof. We think the district court in this case was correct in following our decision in *Sledge,* 585 F.2d at 637, especially since it is the very rule stated by the Supreme Court in *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), quoted later, and the plaintiff has offered no objection to this ruling by the district court.

*See also, League Etc. v. City of Salinas Fire Dept.,* 654 F.2d 557, 558–59 (9th Cir.1981), expressing some question whether the burden of proof shifted to the defendant under *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

reasons for his basic decision save this sentence at the end of his decision:

"I find that the defendant has not borne its burden of proof by a preponderance of the evidence that he would not have been hired anyway after viewing this evidence, bolstered as it has been in the interim between the November, 1979 hearing [at the first trial] and now."

Later, in his judgment order, the district judge added a "clarification" of his decision, "lest there be any uncertainty in the matter." This clarification consisted of but a single sentence:

"The court's feelings at the time it ruled, as well as now, are that the after-the-fact rationale and testimony of the defendant in this regard, particularly where no opportunity had been given the plaintiff to explain the prior transaction with his former employer, were just not persuasive."

The judgment entered by the district court in conformity with this ruling was in two parts: First, it granted injunctive relief by requiring United to "process" plaintiff's application in the same manner as it processed all other applications received at the time plaintiff filed his application, and, if his application were successfully processed, to include him in the first available class of applicants to be provided flight training, which class the court then found in advance of any processing to be that of January 9, 1978, and to be given all rights and benefits "normally afforded United Air Lines pilot employees, including seniority and longevity rights," and certain pension benefits. Second, it granted backpay, holding that, if the plaintiff's application had been processed free of any violation of ADEA, he would be entitled to backpay from January 9, 1978, the date it was found he would have been hired absent discrimination, to date of trial of the case, computed to be $92,501.31, which it doubled as liquidated damages, increasing the pecuniary award to the plaintiff $185,002.62. To this it added an attorney's fee of $125,000, together with costs of $2,160.30.

From that part of the judgment granting the plaintiff backpay and attorney's fees, the defendant has appealed, asserting that the court's finding that the defendant had not proved by the preponderance of the evidence that its defense against such award was clearly erroneous, arrived at by the use of improper standards of proof, and in complete disregard of the undisputed evidence. It raised, also, alternatively the contention that, even if the court had been correct in its dismissal of defendant's defense, it erred in the relief granted. The plaintiff cross-appeals, contending that the denial of his motion for clarification was clearly erroneous. Finding no merit in the plaintiff's cross-appeal, we dismiss such cross-appeal, but reverse the judgment awarding the plaintiff backpay relief, finding that the district court's decision and findings in favor of such an award were clearly erroneous.

Before reviewing the evidence connected with the defendant's appeal herein, it is necessary, particularly in view of certain arguments of the plaintiff later noted and of the language of the district court in its oral decision, to identify specifically the issue with which the present appeal is concerned and to distinguish it from the issue decided by us on the first appeal. We begin such explication by observing that there are generally two issues in disparate treatment cases whether the action be under either the ADEA, Title VII, or Section 1981: One has to do with the substantive issue of violation of the applicable statute or constitutional provision; the other (which, it must be emphasized, only becomes relevant if a violation is proved) involves the remedy which generally presents the question of compelled hiring, reinstatement, or promotion accompanied with backpay. These two issues are separate and distinct and their resolution depends on different, or at least additional, evidence and findings.[6] Thus, in this case, the admitted refusal of the defendant to process the plaintiff's application because of its rule prohibiting the processing of job applications by flight officers

---

6. *Smith v. Secretary of Navy,* 659 F.2d at 1119– 20; *Day v. Mathews,* 530 F.2d at 1084–85.

over 35 years of age constituted, as we held in the first appeal, a violation of ADEA and entitled the plaintiff to injunctive relief against the present and future use of such rule. That specific issue—one of violation—was decided by our decision in the first appeal in this case and is the law of the case. But that determination did not trigger anything more than a mere presumption of a right in the plaintiff to the remedy of employment and backpay, a presumption which was subject to being defeated by proof by the preponderance of the evidence on the part of the defendant that the plaintiff would not have been hired anyway if there had been no discrimination.

This distinction between the two issues, involving as they do separate and distinct findings based upon separate and distinct facts, was initially explicated in connection with a constitutional claim in *Mt. Healthy,* 429 U.S. at 285–87, 97 S.Ct. at 575–76, and was later specifically applied in the employment discrimination context in the companion cases of *Teamsters v. United States,* 431 U.S. 324, 326, 97 S.Ct. 1843, 1850, 52 L.Ed.2d 396 (1977), and *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403–04, n. 9, 97 S.Ct. 1891, 1896–97, n. 9, 52 L.Ed.2d 453 (1977). In the latter case, the Court said:

> "Even assuming, *arguendo,* that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents had not been injured because they were not qualified and would not have been hired in any event."

We have consistently recognized and followed this rule as stated in *Rodriguez,* the most recent illustration of which being *Pat-*

terson v. Greenwood School Dist. 50, 696 F.2d 293, 295 (4th Cir.1982):

> "When a court finds that a plaintiff has been discriminated against in violation of Title VII, it retains broad remedial powers to grant injunctive relief and to order such affirmative action as may be appropriate. *See EEOC v. Ford Motor Co.,* 645 F.2d 183, 200 (4th Cir.1981). When retroactive promotion and back pay are sought, however, further questions must be asked. The statute makes it clear that these forms of relief are available only where the employee would have received the promotion had she not been the victim of discrimination. The case law is also plain that the purpose of a back pay award is to make the plaintiff whole; that is, to restore her to the position she would have occupied but for the discrimination."[7]

■ Although the two issues require separate findings, the resolution of which may depend on different evidence, district courts may in the interest of more efficient administration admit evidence on, and dispose of, both issues in one trial. This was the procedure followed in *Murnane v. American Airlines, Inc.,* 482 F.Supp. 135 (D.C.D.1979), aff'd, 667 F.2d 98 (D.C.Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982), a case very similar on the facts to this case and one relied on by the plaintiff. As here, the defendant commercial airline had refused to process the plaintiff's application for employment as a flight officer because of its rule denying initial employment as a flight officer to persons above a fixed age. That rule was

---

7. The rationale for this rule that the right to backpay does not exist if the claimant would not have been hired absent discrimination is because such right is authorized not as punishment for the defendant or as a windfall for the plaintiff but only to put the plaintiff in the same position *but in no better position* than he would have had there been no discrimination. In *Mt. Healthy,* the Court said:

> "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." 429 U.S. at 285–86, 97 S.Ct. at 575.

In *Cline v. Roadway Exp., Inc.,* 689 F.2d 481, 490 (4th Cir.1982), we stated the same rule:

> "The ordering equitable principle is that a compensatory backpay award should only make the wrongly discharged employee monetarily whole under his employment contract; it should not provide a windfall."

*See also, Walker v. Pettit Const. Co., Inc.,* 605 F.2d 128, 129 (4th Cir.1979), *modified on other grounds,* 611 F.2d 950; *Slatin v. Stanford Research Institute,* 590 F.2d 1292, 1293–96 (4th Cir.1979); *Dean v. American Sec. Ins. Co.,* 559 F.2d 1036, 1038–40 (5th Cir.), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

challenged under the age discrimination statute. The defendant airline defended, as did the defendant in this case, raising the claim that its rule qualified as a bona fide employment qualification but adding the defense that, if the rule were not a valid BFOQ, and there were age discrimination, still the plaintiff would not have been hired anyway and backpay would accordingly not be appropriate in the case. The court tried the two issues together and made a ruling on both claims. It sustained the BFOQ defense[8] but proceeded, also, to dispose of the second claim, saying in that regard:

"American contends that since the evidence indicates that it would not have hired plaintiff in any event, plaintiff could not have been injured by any alleged age discrimination and consequently is entitled to no relief. The Court concurs." 482 F.Supp. at 148.

On appeal that ruling on the right to backpay was affirmed with this statement:

"In the case at hand, as we have already stated, there is 'credible and persuasive evidence' that appellant would not have been selected for the position he claims to have been illegally denied, whether or not the age requirement he objects to was illegally discriminatory. Therefore, applying the principles in the Supreme Court cases just discussed, we conclude that appellant cannot prevail on this appeal." 667 F.2d at 102, *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174.

The Court in that case thus decided both issues on the basis of a single record.

While there is no question that the two issues, though requiring separate and different evidence and standards of evaluation, can be tried together, as was done in *Murnane,* that is not the only way the issues may be tried. A court may bifurcate the trial of the two issues. Such was the procedure in a class action approved by us. *Sledge v. J.P. Stevens & Co.,* 585 F.2d at 637. The district judge made it clear throughout the first trial in this case that he was considering only the violation issue.

Thus, he repeatedly—ultimately, with considerable emphasis and finality—ruled that he would not permit the defendant to inquire either on cross-examination of the plaintiff or by direct evidence fully into the circumstances of plaintiff's termination as a flight officer by his previous airline employer, Overseas National Airways (ONA). He in effect by these rulings bifurcated the two issues in this case. If in this case the district court had been sustained in its decision on the defendant's BFOQ defense in the bifurcated trial, its method of handling the case would have saved the court the problem of developing a full record and making a ruling on the remedy issue. We, however, found on appeal that the BFOQ defense was faulty, and remanded the cause to resolve the remedy issue, as we said in our first opinion. Therefore, the sole issue on remand, for trial by the district court, was the issue the district court did not decide, *i.e.,* whether the defendant had established by the preponderance of the evidence that it would not have hired the plaintiff absent age discrimination. The resolution of that issue required the full examination of plaintiff's termination as a flight officer by his former airline employer, Overseas National Airlines (ONA).

The plaintiff, however, disagrees with this analysis of the issue that was presented at the second trial and that is presented on this appeal. He argues that the BFOQ defense (which he denominates as the "statutory defense") and the remedy defense are not separate issues but are interdependent and that the determination of the first, (the BFOQ defense) is conclusive under principles of *res judicata* of the second (the backpay remedy). He phrases this argument in his brief thus: "Asserting a BFOQ defense logically eliminates the other statutory defense—that the rejection was based upon a reasonable factor other than age (citing *Murnane, supra* ). Since United asserted but failed to prove its BFOQ defense, its liability was established, and it cannot now

---

**8.** *See* note 4, *supra.*

rely upon the (second) defense."[9] Citing § 7(a) of the ADEA, he urges that a finding of a violation under the Act carries with it a mandatory finding of entitlement to backpay, and "*precludes* the defense of 'wouldn't have hired anyway' (italics in brief)." Such an argument is manifestly contradictory of what the Supreme Court said in *Mt. Healthy,* 429 U.S. at 286–87, 97 S.Ct. at 575–76, and what we held in *Patterson v. School District 50,* 696 F.2d at 295.

In *Mt. Healthy,* as we have seen, the Supreme Court directed that in discrimination cases, whether under Title VII or under ADEA, the trial court should first determine whether there was a violation and that, if it found a violation, *then* it should consider and resolve "the defense of 'wouldn't have hired anyway.'" Moreover, any contention that a finding of violation carries with it an inescapable ruling in favor of backpay is contradictory of our first decision in this case in which we reversed the ruling of the district court of no-violation but remanded the case in order that the district court might resolve the issue which had not been resolved by the district court in its first decision, *i.e.,* the issue of backpay.[10] On that remand, which would have been unnecessary if plaintiff's argument were sound, it was both proper and necessary for the district court to do what the court in *Nanty v. Barrows Co.,* 660 F.2d 1327, 1334 (9th Cir.1981) said it should do in such a situation and that is: "afford [the defendant] the opportunity to prove by 'clear and convincing' evidence that [the plaintiff] . . . in the absence of discrimination, . . . would not have been hired." And this is what was done in this case. The dispositive question in the case thus became whether the defendant had satisfied its burden with proof and, if it had, it would have rebutted the plaintiff's claim for backpay. Whether the defendant has satisfied this burden depends on an analysis of the record developed at the second trial. We accordingly turn to the evidence on the issue before the district court.

As we have said, the ground on which the defendant claimed it would have refused to employ the plaintiff as a flight officer if there had been no discrimination was the circumstances of the plaintiff's discharge as a flight officer by ONA on February 13, 1976. The reasons for such discharge were summarized in ONA's letter of discharge addressed to the plaintiff on that date:

"Upon a full evaluation of all of the information available to this Company, as well as the information which you have provided, it has been determined that you have, in a most calculated manner, abused privileges which were extended to you both as an employee of this Company and as a flying officer. We have concluded, based on the available evidence, that you misused your ATP card in that you billed flights undertaken by your children to the Company.

Moreover, and of the utmost importance, you secured a purchase order for an amount in excess of $2,000 for a move which you knew, or should have known, was not actually to be accomplished.

"Overseas National Airways regards each incident to be of such a serious nature that either, standing alone, would constitute grounds for discharge. In view of all circumstances, this Company has no choice but to advise you that your services with ONA are hereby terminated."

There was later a hearing on these reasons for discharge before a Board of Adjustment, convened on the demand of the plaintiff under the terms of the agreement between the plaintiff's Union and the airline.[11] At this hearing, which was held on February 1, 2, 3, and 8 and May 17, 1977,

---

**9.** The plaintiff identifies this second defense as the "RFOA" defense (a reasonable factor other than age).

**10.** *See* 661 F.2d at 306, n. 3.

**11.** Under the collective bargaining agreement between the Pilot's Union and ONA, an employee discharged by the employer, had a right to demand a hearing to investigate and rule on the discharge before an Adjustment Board, consisting of two members selected by the Union, two by the employer and an impartial Referee selected by the other members of the Board.

the plaintiff, assisted by a representative of his Union, and the employer were heard. Both parties stated their respective positions and offered evidence in support. The plaintiff does not contend that the hearing was unfairly conducted or that there was any denial to him of the right to present his evidence. The record is full and complete. All the hearings and the briefs of the parties to the proceedings preceded the filing of plaintiff's application for employment with the defendant and were fully known to the plaintiff. Later the impartial Referee filed a lengthy report, which was concurred in by two other members of the Board. The members of the Board who did not concur in the result recommended by the impartial Referee did not, however, take any exception to the Referee's review of the evidence, or to his findings on the basis of such evidence; their objections seemingly were directed at the severity of the penalty. Nor, for that matter, has the plaintiff offered any objections to the statements in the Referee's report, summarizing the positions of the parties or the evidence offered, though he does argue that the penalty was too severe. That report and the record are a part of the trial record herein. It seems fair under these circumstances to look to this report for a statement of the circumstances of plaintiff's discharge.

As the report of the impartial Referee makes clear, the first basis for plaintiff's discharge by ONA was the procuring by the plaintiff of a purchase order from ONA in June, 1975, to cover moving expenses arising out of plaintiff's change of base from California to New York City. Under the agreement between the Pilots' Union and ONA, reimbursement was to be had for "[m]oving expenses ... only when a pilot moves from a previous base to his new base ... if the pilot locates within one hundred fifty (150) miles from the new base." In securing the purchase order, the plaintiff represented he was moving to Cherry Hill, New Jersey, a location within 150 miles of plaintiff's new base of New York City. The plaintiff, however, did not move, and

there was no evidence he ever intended to move to Cherry Hill. He actually moved, as he apparently always intended, to Burke, Virginia. Burke was concededly not within 150 miles of New York. His household goods and furniture arrived in Burke from California on June 24, 1975 and were placed in a home in Burke which the plaintiff had contracted for on June 25.

Under the explicit language of the agreement, as quoted above, the plaintiff was not entitled to reimbursement for moving expenses for his move to Burke and, had he not represented falsely that he was moving to Cherry Hill, he would not have had a right to the purchase order from ONA. The plaintiff would excuse his misrepresentation as due to a misunderstanding of the language of the agreement. The Adjustment Board was unable to accept that excuse. We are likewise unable to accept it. The language of the Agreement is clear. It is inconceivable that one with the educational background and business experience of the plaintiff could have misunderstood the simple language of the Agreement. The plaintiff was a graduate engineer and a graduate lawyer who had been both a University instructor in law and an active legal practitioner in several states.[12] In addition, his conduct demonstrated he understood the Agreement's limitation upon a right to moving expenses. ONA offered proof that before the plaintiff had procured his purchase order to cover moving expenses to Cherry Hill, he had requested a waiver of the 150-mile limitation on his right to moving expenses and his request had been denied. In the face of this conduct, the plaintiff was in no position to claim he did not understand the provision of the Agreement relative to moving expenses.

Moreover, a majority of the Adjustment Board, in their findings, concluded that the plaintiff had misled ONA into issuing a purchase order in his favor for moving expenses by intentionally misleading ONA to believe that he was moving his residence to a location within 150 miles of New York. The report points out in substantiation of

---

**12.** Actually, his application stated he was engaged in the practice of patent law at the time.

this conclusion that the plaintiff ordered stationery with his address given as Cherry Hill, rented a post office box and arranged for a telephone listing (though the listing was of an answering service) in Cherry Hill, and, after he had moved to Burke, had written ONA "on New Jersey stationery, and called specific attention to his New Jersey telephone number (which was not at his 'residence')." The Adjustment Board majority found that at no time, either before or after his moving to Burke, had the plaintiff made any effort to secure, or had any intention of establishing a home in Cherry Hill, and that, in the Referee's opinion, his actions in procuring stationery, showing his address as Cherry Hill, the obtaining of a post office box in Cherry Hill, and the use of an answering service's number in Cherry Hill, "suggest deliberate deception" on the plaintiff's part. This conduct of the plaintiff, in the Referee's opinion, "was a most serious act, one which would normally call for the severest of penalties" (which it would be assumed meant discharge).

There was, also, a second delinquency charged against the plaintiff in the letter of termination, equally serious. It involved the use of his ATP card in purchasing transportation for his children from California east. The purpose of issuing an ATP credit card to flight officers was "to enable employees, such as captains" to secure transportation "from one place to another to pick up or leave scheduled Company flights" but specifically such card was "not to be used for the travel of dependents, whether for personal pleasure or pursuant to a move." The use of the card by the plaintiff for a purpose known to him to be improper was an inadmissible charge to ONA.

ONA, however, had procrastinated in taking prompt action against the plaintiff after discovering this misconduct on his part. It offered what appears to have been plausible excuses for such delay but a majority of the Adjustment Board decided that, because of this delay, an eighteen (18) month suspension rather than outright termination was in order. But, in agreeing to such

penalty, the impartial Referee chose to add this statement:

"A severe penalty certainly, was warranted, since the grievant's misconduct was extremely serious. . . .

"While rescinding the discharge, the undersigned wants to emphasize that he in no way condones the grievant's handling of his financial relations with the Company. Since pilots are virtually unsupervised in their daily activities, they must be completely trustworthy, both in large and small transactions."

All of these facts, so carefully spelled out in the Report of the Referee were exposed both by ONA's investigation and at the Board's hearings, which occurred before plaintiff filed his application for employment with the defendant. The plaintiff sought to moderate this serious transgression by asserting that he admitted to the ONA in August, 1975, that he had actually moved to Burke and not to Cherry Hill, and that he had reimbursed ONA for his children's transportation. His admission of his move to Burke, however, was quite some time after he had procured his purchase order on the representation he was then in the process of moving to Cherry Hill, according to the Referee's Report; his reimbursement for his misuse of his ATP card occurred only after ONA had discovered the misuse and was threatening disciplinary action against plaintiff. He conceded at the hearing that his actions under investigation may have been "questionable" and that he may have been negligent in saying he was moving to Cherry Hill rather than Burke, but "he was under great [domestic] pressures" at the time and in any event "the penalty was grossly inappropriate." The plaintiff even contended at one time that ONA had "deliberately entrapped" him into making admissions related to his transgressions as an employee of ONA. There can be under this record no reasonable basis for finding that the plaintiff had not engaged in misconduct reflecting on his trustworthiness, which misconduct led to his lengthy suspension by ONA as a flight officer.

The district judge, in his oral decision at the conclusion of the trial herein finding that the above evidence did not persuade him that the plaintiff would not have been hired anyway, made no specific findings of fact of his own nor did he indicate disagreement with any of the factual findings set forth in the Report filed by the impartial Referee of the Adjustment Board, filed as a part of the record herein. The only clue to the district judge's rationale for his decision against the defendant's defense appears in three comments made by him in his oral opinion and in his later clarification. No one of these comments relates to the actual facts and circumstances of the "alleged fraud" practiced by the plaintiff against his employer, ONA. The factual showing in the record of such misconduct by the plaintiff while in the employment of ONA seems to have been accepted by the district judge. The district judge's primary objection to the defendant's defense as based on these undisputed facts was that these facts and the conclusion they required represented an "after-the-fact rationale," because the facts had not been "available" to the defendant at the time the latter refused to process plaintiff's application for employment. He declared that he had great doubt whether such "after-the-fact" evidence should be admitted but if "admissible" it was the duty of the court to view it with skepticism. It seems, also, that the district judge felt that the defendant should have, before refusing to process the plaintiff's application, offered the plaintiff an opportunity to give his side of his difficulty with ONA.

■ The idea that the defense, based as it was on undisputed facts, should be dismissed or burdened with a heavy cloak of skepticism because it was an "after-the-fact rationale" is a reason that is completely contrary to the bellwether case in this area of *Mt. Healthy.* In that case, the Court said:

> "Initially, in this case, the burden was properly placed upon respondent to show that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' in the Board's

decision not to hire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576.

In short, the Supreme Court instructed district courts in cases where the issue is such as here that they *"should"* proceed to make the "after-the-fact rationale" which the district court in this case deprecates. Moreover, it nowhere countenanced the idea that the evidence on this issue was to be treated with skepticism; the clear inference is that such evidence was to be weighed by the same standards as other testimony.

This construction of *Mt. Healthy* has been followed in repeated decisions; in fact, we have found no authority which supports the district court's condemnation of what it characterizes as the "after-the-fact rationale" in this context. Certainly, the Court did not follow this reasoning of the district court in *Murnane,* in which, as we have seen, the airline had, as the defendant here, first refused to process the plaintiff's application under a policy of not processing applications for employment as a flight officer by one who was over 40 years of age. But the defendant was permitted to prove by other facts later developed it wouldn't have hired the plaintiff anyway. We did the same in *Patterson,* 696 F.2d 293. Moreover, this procedure is, as the Court described it in *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982), "[c]onsistent with the ADEA's purpose of recreating the circumstances that would have existed but for the illegal discrimination" in determining whether a claimant is entitled to backpay. And, there is nothing unusual in a court resolving what a party to litigation would or should have done under certain circumstances. It is done repeatedly in tort cases. Courts have not bridled in these cases at making "after-the-fact rationale[s]." Neither may they in cases such as this.

■ Similarly, there is no support in the authorities for the doubt expressed by the district court in its oral opinion on the availability ("not available") of the defense that the plaintiff "wouldn't have been hired anyway" because that point was not raised at the time the plaintiff's application was initially denied processing. *Murnane* is a perfect answer to such expression of doubt. The defendant there did not raise the plaintiff's disqualification for employment when it refused to process plaintiff's application and the evidence on which it rested its contention that the plaintiff would not have been hired "anyway" all involved incidents occurring months after the court had found the defendant had refused to process plaintiff's application because of his age. Our own case of *Patterson*, 696 F.2d at 295–96, is likewise in point. There the district court found that the defendant, in filling a vacancy of assistant principal, had "improperly discriminated against [the plaintiff] in violation of Title VII." The defendant did not on appeal except to this finding. Its defense was that "at least four of the five interviewers [who made the selection in question] would have selected another female applicant ahead of plaintiff for reasons other than prohibited discrimination," and thus the plaintiff would *not* have been selected "anyway." It supported this contention with the evidence of the interviewers. We ordered judgment in favor of the defendant on the issue of backpay because the evidence demonstrated that the plaintiff would not have received the promotion had there been no sex discrimination. Even in *Rodriguez v. Taylor*, 569 F.2d 1231, 1240–41 (3d Cir.), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), the court said that if the defendant had offered proof at trial [there was no bifurcation of issues in this case] that the plaintiff at any time prior to trial had failed the civil service examination, he would have been denied backpay. In summary, what these cases show is that the disqualification for employment and thus for backpay, based on a "recreating [of] the circumstances that would have existed but for the illegal dis-

crimination."[13] may be established by evidence which had not been developed at the time the claimant was denied employment, provided such evidence is proved at trial of the remedy issue. In this case, the defendant's evidence that the plaintiff would not have been hired absent age discrimination because of the circumstances of his discharge for misconduct by his prior airline employer was in existence at the time the plaintiff's application was denied processing [a fact different from *Murnane* where the evidence of disqualification occurred after refusal to process] and the evidence that the defendant would not have hired anyone guilty of such misconduct as a flight officer was undisputed.

The feeling of consideration for the plaintiff, as expressed by the district judge in his comment that the defendant should have given the plaintiff an opportunity to give his side of his controversy with ONA is misplaced. Of course, the defendant had no occasion to discuss the plaintiff's discharge by ONA with the plaintiff at the time it refused to process plaintiff's application. It had disqualified the plaintiff for employment because his statement of his age in the very first part of plaintiff's application made any inquiry into plaintiff's prior employment unnecessary under the defendant's BFOQ rule. It was only later when it made inquiry of ONA that the fact of plaintiff's discharge came to defendant's attention. It acquired then the full proceedings before the Adjustment Board. The plaintiff had given such explanation as he could with reference to the two actions resulting in his discharge at the hearing before that Board. His discharge was injected into the case at both trials in this court, though the court at the first trial denied the defendant an opportunity to examine it fully. At both of these trials the plaintiff had his opportunity to make such explanation as he wished. The tenuousness of that explanation is evident in the record both of this trial and of the Adjustment Board hearings. In view of these opportunities to explain his "side of

**13.** *Gibson v. Mohawk Rubber Co.*, 695 F.2d at 1097.

the story" it would have been a waste of time to request of the plaintiff another explanation.

■ It is thus clear that, so far as any of the reasons assigned even obliquely by the district court as a basis for dismissing the defendant's defense, they cannot justify a dismissal of the defendant's defense. Moreover, the facts in support of the defense [the grounds for plaintiff's discharge by ONA] are fully detailed in the record and completely justified the defendant's action. Under these circumstances, the district court's conclusion dismissing this defense based on the reasoning stated by such court, is clearly erroneous.

But the plaintiff himself, in his brief in this Court, has sought to state reasons other than those suggested by the district judge for upholding the court's decision awarding backpay. It is interesting that these reasons do not relate to the accuracy of the conclusions by the Adjustment Board majority on plaintiff's misconduct while employed by ONA. His reasons in effect assume the correctness of the findings of the Adjustment Board majority and rest on the hypothesis that the plaintiff's conduct so established and found, and as established in the record here was irrelevant and any evidence of such misconduct should not have been received. It is doubtful that the plaintiff ever raised properly this issue before the trial judge. Whether plaintiff did or not, it is manifest from the record that the district judge never ruled on the point. Certainly, there is no reference to the claim either in the district judge's oral decision or his clarification. But, assuming that the point is properly before us, though, we find it without merit.

This argument of the plaintiff is that proof of his "alleged fraud" upon his former airline employer which caused that employer to discharge him is irrelevant to his qualifications mechanically to operate and pilot an airplane and is, therefore, irrelevant to the issue to be resolved herein, which, he contends, is confined to the ability mechanically to operate and pilot an airplane such as that used by the defendant

in its operations. To be more specific: What the plaintiff contends is that trustworthiness, reliability and honesty are in no way required or expected of a pilot of a large commercial plane, to whose substantially unsupervised competency, trustworthiness, reliability, and fidelity to the rules and regulations is committed the safety of the scores of passengers on the plane he pilots. We are unwilling to accept this argument. The logs a pilot maintains, the accuracy of his reports, the faithful and exacting observance of all the safety rules and regulations and their accurate and punctual recording, all are vital to the safety of the plane's passengers and all depend on the trustworthiness, truthfulness and reliability of that pilot aloft, where he operates largely free from any effective supervision. Any argument that the only qualification of such a flight officer is his mechanical ability to manipulate the various controls of the plane completely lacks conviction. And the evidence in this record demonstrates the necessity for these additional qualifications of trustworthiness and reliability.

The officer of the defendant, who had the responsibility for evaluating applications for employment as flight officers by the defendant, testified to the reasons why trustworthiness and reliability were essential qualifications for employment by a commercial airline of a flight officer. He said:

"Well, I think there are two major reasons. The first being a general statement that United Air Lines is involved with providing a service to the public and we have to create an honest and sincere image with the public. So any employee of United must demonstrate integrity and honesty. In the case of a cockpit crew member, however, I think there is an added factor that comes into it, and that is that cockpit crew members for the most part are people that you have to trust since you can't oversee their operations on a day-to-day basis. You simply can't supervise them. If you're making widgets, you walk down on the floor and

see how production is going; but in the case of a flight crew, they may be at 39,000 feet or two miles up and there is no way that you can on a daily basis supervise their work. So it's doubly important that they demonstrate integrity and honesty."

The impartial Referee on the Adjustment Board who, undoubtedly was selected by the other members of the Board because of his expertise in employment relationships involving commercial airlines, had earlier confirmed this essential qualification for a flight officer on a commercial airline. He had written in his formal report on plaintiff's grievance against ONA: "Since pilots are virtually unsupervised in their daily activities, they must be completely trustworthy, both in large and small transactions." Moreover, a majority of the Adjustment Board was of the opinion that such trustworthiness and reliability were to be deemed requirements for the proper performance of a flight officer's employment. If this were not so, there would have been no justification for an eighteen months' suspension of the plaintiff or of his discharge. Nor was this all that was in the record on this point. The plaintiff himself had, prior to his discharge by ONA, sat as a member of an Adjustment Board, investigating another flight officer's grievance arising out of misconduct similar to that of the plaintiff here, and the plaintiff joined in a penalty of an eighteen months' suspension for the offending employee. Thus, in the opinion of the plaintiff, his transgression was of such a serious character as to justify the severe penalty. That penalty could not have been justified if that misconduct had not gone to the faithful performance of his duties and responsibilities as a flight officer. In the face of this record, this point loses any value.

■ Finally, the plaintiff argues that, even if we were to conclude that it was clear error for the district court not to uphold defendant's defense, this decision should not operate to "cut-off [plaintiff's] entitlement to damages prior to the time that the disqualification determination was made." In effect, the plaintiff is contending that, though we may find that the plaintiff would not have been hired anyway based on facts existing at the time he filed his application for employment with the defendant and facts which would have been developed in a reasonable processing of such application by the defendant—a finding which, the plaintiff seemingly concedes for purposes of the argument would foreclose a backpay award—that finding would only operate to bar backpay from the date we made that determination and that for the period between the date when he would have been employed if there had been no disqualification and that of our determination, he would be entitled to backpay. This argument we find untenable. The question is whether the plaintiff would not have been hired had the defendant followed its normal procedure and processed the plaintiff's application as it did all others. Such processing would have included inquiries of the plaintiff's former airline employer as listed on his application form. That inquiry would have elicited the full evidence of the circumstances of plaintiff's discharge by ONA. The information received from ONA would have meant the plaintiff would never have been hired by the defendant as a flight officer. Under those circumstances, the plaintiff would have, like the plaintiffs in *Murnane, Patterson* and *Gibson,* not been entitled to backpay. Neither *Rodriguez v. Taylor,* 569 F.2d 1231, nor *Houghton v. McDonnell-Douglas Corp.,* 627 F.2d 858 (8th Cir.1980), the two authorities cited by the plaintiff in support of his theory, is on point.[14]

14. In *Rodriguez* the defendant had stood mute after the plaintiff had established a prima facie case, even though it had a perfect defense that the plaintiff would never have been employed because he could not pass the required civil service examination. Had the defendant offered proof of that fact, if it had given the test

before trial and proved the plaintiff's failure, the defense against the award of backpay would have been sustained and the action dismissed so far as that issue of backpay was involved. And the Court said exactly this. What the defendant did was to delay until after judgment before it gave the test. That it was

It follows from what we have said that it is incontestable on the record that the plaintiff would never have been employed by the defendant as a flight officer on the basis of his 1977 application. The circumstances of his termination by ONA, fully developed in the record, were such that, under its customary procedure for evaluating applicants for employment as flight officers, the defendant would unquestionably not have found the plaintiff qualified for employment. Neither the district court nor the plaintiff has suggested a single *fact* or circumstance that would support a contrary conclusion. The district court's purely conclusory statement supported by no explicit fact finding, is inadequate. *EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633 (4th Cir.1983); *Holsey v. Armour & Company,* 683 F.2d 864 (4th Cir.1982).

It remains to be decided what disposition to make of this appeal under these circumstances. Ordinarily, the procedure would be to remand the cause to the district court for resolution. However, this appears to be one of those exceptional cases such as *Patterson* where it is obvious from a thorough review of the undisputed record that there

is but one possible resolution of the critical issue on this appeal and that "any other resolution by the district court would be clearly erroneous." In that situation it is not necessary to follow the usual rule of remanding the cause to the district court for further action: it is appropriate for us to make the finding that the defendant would not have hired the plaintiff if there had been no age discrimination and thus reverse the finding of the district court that the plaintiff is entitled to backpay and order dismissal of plaintiff's claim to the processing of his application and to backpay.

Reversed and remanded for the entry of an appropriate judgment.

---

this delay that was the basis for dismissal of defendant's defense is obvious from this language of the opinion:

> "The City might well have satisfied its burden of production and *conclusively* settled the ultimate issue of Mr. Rodriguez's qualifications had they only administered to him the written civil service exam prior to trial. Instead, the City failed to promptly administer the written exam precluding development of material evidence on this issue until after trial. The importance of requiring employers to adhere to their evidentiary burden *at trial* is underscored by consideration of the consequences of delaying final determinations of Mr. Rodriguez's back pay award until the exam was taken (Emphasis added)." 569 F.2d at 1240.

The defendant in this case has not stood mute or delayed to present its evidence until after trial. The defendant has *at trial* adduced clear proof why it would never have employed plaintiff absent discrimination.

In *Houghton,* the defendant had no specific age limitation on retention of test pilots. The plaintiff had been terminated for age, it being the defendant's contention that the plaintiff "could no longer qualify" as a production test pilot. The testimony was addressed to the point whether the plaintiff was qualified at the time he was fired and up to February 18, 1975. Both parties adduced testimony directed to such point. The jury decided in a verdict that he was so qualified. The court in the first appeal decided that up to February, 1975, the plaintiff was entitled to backpay but ruled that, after that date, his qualifications were open to proof. The cause was remanded to determine that question. On remand that question was resolved against the plaintiff. That case presents a situation unlike the one here.

As we have said, neither case parallels the present case. Unlike the defendant in *Rodriguez,* the defendant in this case sought and was denied at the first trial the right to prove the plaintiff's disqualification for employment; at the second trial, however, the defendant did establish such disqualification.