**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1622**

RICHARD A. RINALDI,

             Plaintiff - Appellee,

        v.

CCX, INCORPORATED,

             Defendant – Appellant,

        and

BARRY SILVERSTEIN; DENNIS MCGILLICUDDY,

             Defendants.

**No. 09-1671**

RICHARD A. RINALDI,

             Plaintiff - Appellant,

        v.

CCX, INCORPORATED,

             Defendant – Appellee,

        and

BARRY SILVERSTEIN; DENNIS MCGILLICUDDY,

             Defendants.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:05-cv-00108-RJC-DSC)

---

Argued: May 13, 2010                    Decided: July 16, 2010

---

Before DUNCAN and KEENAN, Circuit Judges, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

---

Affirmed in part, reversed in part, and remanded with instructions by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Duncan and Senior Judge Alarcón joined.

---

**ARGUED:** John Robbins Wester, Kate E. Payerle, ROBINSON, BRADSHAW & HINSON, PA, Charlotte, North Carolina, for Appellant/Cross-Appellee. Kenneth Todd Lautenschlager, JOHNSTON, ALLISON & HORD, Charlotte, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** John C. Lindley III, JOHNSTON, ALLISON & HORD, Charlotte, North Carolina, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

This is an appeal of a judgment entered after a bench trial in an action brought under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. The defendant, CCX, Inc. (CCX), appeals from the district court's award of severance benefits to Richard Rinaldi, CCX's former president and chief executive officer (CEO). Rinaldi has filed a cross-appeal, primarily challenging the district court's denial of his request for attorneys' fees and costs. For the reasons stated below, we affirm the district court's award of severance benefits and its order denying Rinaldi's request for attorneys' fees. However, we reverse the district court's order denying Rinaldi's request for costs and remand the case for reconsideration of an award of costs.

I.

The evidence at trial showed that CCX, a privately held Delaware corporation, manufactures metal and fiberglass screening mesh for use in windows, doors, and other building products. In May 1991, CCX hired Rinaldi as its president and CEO. Almost three years later, Rinaldi and CCX entered into the "First Amendment to Employment Agreement" (the Employment Agreement), which remained in effect during the remainder of Rinaldi's employment with CCX. The Employment Agreement

3

provided that Rinaldi was entitled to certain severance benefits, including salary, term life insurance, and medical insurance, if his employment was terminated involuntarily "[o]ther than for cause," or if CCX sold substantially all its assets.

As CEO, Rinaldi was required to "report and be responsible to" CCX's board of directors. Dennis McGillicuddy was the chairman of the board, which included Rinaldi and three other directors. According to McGillicuddy, Rinaldi "had done an exceptional job running the company."

In early 2004, CCX began efforts to sell its Mesh Division, a business unit that represented about ninety percent of CCX's assets and employed a majority of the company's personnel. Rinaldi sent McGillicuddy a letter stating that a sale of the Mesh Division would activate the terms of the Employment Agreement granting Rinaldi severance benefits, if he chose to end his employment on completion of the sale. Despite McGillicuddy's understanding that Rinaldi likely would leave CCX and be entitled to severance benefits if the Mesh Division were sold, CCX proceeded with its plans to sell that unit.

Rinaldi led CCX's negotiating team for the sale of the Mesh Division. He was assisted in his efforts by McGillicuddy and Barry Silverstein, who owned a total of eighty percent of CCX's

4

stock.  McGillicuddy and Silverstein also hired other persons to help Rinaldi effect a sale.

By October 2004, a conflict had developed between Rinaldi and other members of the negotiating team regarding Rinaldi's negotiating tactics and strategic approach.  One team member informed McGillicuddy and Silverstein about concerns regarding Rinaldi's approach, and suggested that Rinaldi be removed as lead negotiator or be discharged from the company.

The tension between Rinaldi and other members of CCX's leadership culminated in an October 6, 2004 telephone conversation involving McGillicuddy, Silverstein, and Rinaldi. During this conversation, Silverstein told Rinaldi that he was not satisfied with Rinaldi's efforts to sell the Mesh Division. The parties dispute the exact words of Rinaldi's response,[1] but McGillicuddy and Silverstein allegedly understood Rinaldi's statement as announcing his resignation.  McGillicuddy and Silverstein immediately drafted severance documents reflecting Rinaldi's purported action.  The locks on the doors of CCX's

_____

[1] Rinaldi testified that he stated, "[i]f you don't have confidence in me, fine, I'm not involved [with the sale]," while Silverstein recalled Rinaldi responding that "[i]f they were trying to force Jim Shein [a possible replacement for Rinaldi as lead negotiator for the sale] on him he was out of there."  All the parties agreed that Rinaldi never used the words "I quit" or "I resign" during this telephone conversation.

5

headquarters were changed the next day, and Rinaldi was denied entry to his office.

Following the telephone conversation at issue, Rinaldi repeatedly stated that he had not resigned, and he took immediate steps to correct any possible misunderstanding to the contrary. Nevertheless, CCX denied Rinaldi severance benefits based on CCX's determination that he voluntarily ended his employment.

Rinaldi filed a complaint against CCX in the district court, initially alleging breach of contract and a violation of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1 to –25.25. The district court later entered an order converting Rinaldi's state law claims to an ERISA claim, pursuant to Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 290 (4th Cir. 2003).

The case proceeded to a bench trial, in which CCX raised two main issues: (1) whether Rinaldi voluntarily resigned or was terminated from his employment without cause; and (2) if Rinaldi was discharged, whether his employment otherwise would have been terminated for misconduct because of his questionable travel reimbursement requests allegedly discovered after his departure.[2]

---

[2] In this opinion, we will refer to this concept as the "after-acquired evidence" defense.

After hearing the testimony of several witnesses, including testimony by Rinaldi, McGillicudy, and Silverstein, the district court found that Rinaldi did not resign voluntarily but was terminated from his employment. The district court concluded that even under McGillicuddy and Silverstein's version of the October 6, 2004 telephone conversation, Rinaldi's statement did not constitute an offer of resignation. Moreover, the district court reasoned, Rinaldi's conduct following that phone call, as well as the financial motivations of McGillicudy and Silverstein, supported the conclusion that Rinaldi was involuntarily terminated from his employment.

Critically, in deciding the issue whether Rinaldi departed voluntarily, the district court found that "several aspects of Silverstein and McGillicuddy's testimony [were] not credible." The district court also found that McGillicuddy and Silverstein "seized upon an opportunity to remove" Rinaldi once they concluded that the sale of the Mesh Division could occur more quickly without Rinaldi's involvement. In finding the testimony of McGillicuddy and Silverstein not credible, the district court relied in part on its observation of these witnesses' demeanor while testifying, as well as the district court's conclusion that McGillicuddy and Silverstein's version of the events was implausible.

7

After rejecting CCX's contention that Rinaldi resigned voluntarily, the district court considered CCX's after-acquired evidence defense. According to CCX, it first became aware during discovery in this case that Rinaldi sometimes used "frequent flyer miles" for business travel, but later sought and obtained cash reimbursement from CCX for the listed cost of those trips. Rinaldi engaged in this practice seventeen times during his six-year tenure as CEO, and received about $22,000 in "reimbursements" for alleged expenses that he did not actually incur.

Rinaldi testified that he selectively used his frequent flyer miles in this manner for "very rich reward situation[s]," such as expensive flights from Charlotte, North Carolina to Pittsburgh, Pennsylvania. For ten such trips between Charlotte and Pittsburgh, Rinaldi sought cash reimbursement from CCX despite having used frequent flier miles, and received, on average, $877.42 for each of these trips. Rinaldi also used frequent flyer miles, but sought cash reimbursement, for trips to Milan, Italy, and Cologne, Germany, obtaining reimbursements of $4,089.37 and $5,226.55, respectively.

Rinaldi did not dispute that he engaged in this practice, but instead claimed that he discussed the practice with company auditors and with CCX's Chief Financial Officer (CFO). However, Rinaldi did not report these payments as taxable income to the

Internal Revenue Service (IRS). After reviewing this evidence, the district court found that Rinaldi's "frequent flyer scheme is dishonest on its face." The district court also rejected Rinaldi's explanation regarding why he did not report this income to the IRS, finding Rinaldi's testimony on this issue "not credible."

Upon agreement of the parties, the district court applied a test requiring that CCX prove its claim of after-acquired evidence by establishing the following three elements:

> (1) Rinaldi was guilty of some misconduct of which CCX was unaware;
> (2) the misconduct constitutes "acts of dishonesty" in connection with CCX's business, "gross neglect" of his obligations, or "illegal acts;" and
> (3) []CCX would have discharged Rinaldi for cause had it known of the misconduct.

The district court held that CCX failed to establish the first and third elements of this test. The district court concluded that CCX failed to prove the first element, because CCX did not show that it was unaware of Rinaldi's travel reimbursement requests before CCX discharged him. The district court based this conclusion on its finding that the CFO had knowledge of Rinaldi's travel reimbursement requests, and that the CFO's knowledge was imputed to CCX.

The district court also held that CCX failed to prove the third element, because CCX did not show that it would have terminated Rinaldi's employment had it been aware of his travel

9

reimbursement scheme. In reaching this conclusion, the district court made the following credibility determination: "McGillicuddy's testimony alone is insufficient to establish the third [element]. The Court was not persuaded by the self-serving statements of McGillicuddy that had he known of the misconduct, he would have terminated Rinaldi for cause."[3]

The district court entered final judgment in favor of Rinaldi, awarding damages totaling $880,000.00, and prejudgment interest in the amount of $140,221.25. The district court also denied Rinaldi's requests for attorneys' fees and costs. This appeal and cross-appeal followed.

## II.

We review the district court's factual findings for clear error, and we afford the "highest degree of appellate deference" to those factual findings when they are based on assessments of

---

[3] In further support of its conclusion, the district court noted that CCX's bylaws provide the mechanism for removal of corporate officers. Under the bylaws, the district court observed, Rinaldi's wrongdoing was required to have been presented to the board of directors before Rinaldi could have been terminated from his employment. However, Rinaldi's conduct was not presented to the board at any time. Additionally, the district court found significant the fact that CCX did not terminate its CFO, even though CCX had been made aware that the CFO knew about Rinaldi's misconduct. Thus, the district court reasoned, CCX's decision retaining the CFO rendered implausible CCX's claim that it would have discharged Rinaldi for engaging in the conduct at issue.

10

witness credibility. United States v. Thompson, 554 F.3d 450, 452 (4th Cir. 2009) (applying Fed. R. Civ. P. 52(a)(1)(6)). We review the district court's legal conclusions de novo. Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512 (4th Cir. 2002).

CCX does not challenge on appeal the district court's holding that Rinaldi was terminated involuntarily from his employment. Instead, CCX solely argues that the district court erroneously concluded that CCX failed to establish its after-acquired evidence defense.

Although we have not previously considered an after-acquired evidence defense in an ERISA case, we have considered this defense in other types of civil cases. In our decisions in those cases, we have applied a three-part test that is essentially the same as the test employed here by the district court. See, e.g., Dotson v. Pfizer, Inc., 558 F.3d 284, 298 (4th Cir. 2009) (involving alleged violations of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654); Miller v. AT&T Corp., 250 F.3d 820, 837 (4th Cir. 2001) (same); Russell v. Microdyne Corp., 65 F.3d 1229, 1240 (4th Cir. 1995) (involving alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17). The three-part test used by the district court also is essentially the same as the Supreme Court's test for after-acquired evidence set forth in McKennon

11

<u>v. Nashville Banner Publishing Co.</u>, 513 U.S. 352, 362-63 (1995), a case arising under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634.

The parties do not dispute the applicability of this test. Therefore, in reviewing the district court's holding that CCX failed to establish the first and third elements of the after-acquired evidence test, we must determine whether the district court clearly erred in finding that CCX failed to establish that:

> (1) Rinaldi was guilty of some misconduct of which CCX was unaware; [and]
>
> . . .
>
> (3) []CCX would have discharged Rinaldi for cause had it known of the misconduct.

CCX was required to prove every element of its defense in order to prevail. Because we conclude that the district court did not err in finding that CCX failed to establish element three above, we need not review the district court's finding on element one.

With regard to element three, the district court found that Rinaldi's travel reimbursement requests were "dishonest on [their] face." We decline to disturb this factual finding.[4] The

---

[4] We reject Rinaldi's argument that the district court erred in concluding, under the second element of the after-acquired evidence test, that the travel reimbursement scheme was (Continued)

12

grounds for termination for cause stated in the Employment Agreement include "[a]cts of dishonesty (including but not limited to theft or embezzlement) in connection with the Company's business." Therefore, the conduct at issue plainly was a ground for termination with cause under the Employment Agreement.

Although CCX proved that it could have discharged Rinaldi under the Employment Agreement, CCX also was required to prove that it would have done so. In concluding that CCX did not prove that it would have discharged Rinaldi had it known of his dishonest conduct, the district court was influenced by its opinion of the witnesses' credibility. The district court was not persuaded by "the self-serving statements of McGillicuddy that had he known of the misconduct, he would have terminated

---

"dishonest." Rinaldi's primary contention is that subjective dishonesty is required, and that his acts cannot be labeled dishonest because he lacked the intent to deceive. This argument lacks merit, because the Employment Agreement prohibits "acts of dishonesty," and does not limit such acts to those involving subjective intent on the part of the actor. Further, even if the language at issue encompassed only acts of subjective dishonesty, there is ample evidence in the record that Rinaldi's travel reimbursement requests were subjectively dishonest. As the district court observed, Rinaldi did not report the airfare reimbursements as taxable income, and the court found his explanation for failing to do so not credible. Also, Rinaldi's own testimony showed that he selectively used his frequent flyer miles for "very rich reward situation[s]" and high-value flights.

13

Rinaldi for cause." Thus, the district court simply did not believe that Rinaldi's actions would have caused CCX to discharge him. Because the district court's conclusion was informed by its opinion that McGillicuddy lacked credibility, that conclusion is entitled to the "highest degree of appellate deference." Thompson, 554 F.3d at 452 (citing Fed. R. Civ. P. 52(a)(1)(6)). For this reason, we will not disturb the district court's determination, and we hold that the district court did not err in concluding that CCX failed to establish the third required element of the after-acquired evidence defense. We therefore affirm the district court's holding that Rinaldi was entitled to severance benefits under the Employment Agreement.

Our holding is not altered by CCX's additional argument that the district court impermissibly burdened McGillicuddy's testimony with a "heavy cloak of skepticism" in violation of our decision in Smallwood v. United Air Lines, Inc., 728 F.2d 614 (4th Cir. 1984). We conclude that this argument lacks merit.

In Smallwood, a case decided under the ADEA, we held that the district court erred in rejecting an employer's "after-the-fact rationale" based on the district court's statement that it had a "duty" to view the employer's "after-the-fact" evidence with skepticism. Id. at 623. We emphasized that the district court "made no specific findings of fact of [its] own" on the after-acquired evidence issue and doubted whether the after-

14

acquired evidence was admissible.  Id.  We explained that, rather than burdening such "after-the-fact" evidence with a "heavy cloak of skepticism," courts should weigh this type of evidence by the same standards as other testimony.  Id.

This principle expressed in Smallwood, however, is inapposite to the facts of this case.  Although the district court characterized McGillicuddy's testimony as "self-serving," the district court did not "burden" such testimony with skepticism or otherwise hold CCX to a higher standard of proof. Instead, unlike the district court in Smallwood, the district court here made specific factual findings, supported by the record, that justified its application of the after-acquired evidence doctrine.  Moreover, any degree of skepticism expressed by the district court likely was derived in part from its express findings that McGillicuddy lacked credibility on other key issues.[5]  Therefore, we conclude that the district court, consistent with our decision in Smallwood, considered the testimony relating to CCX's after-acquired evidence defense

---

[5] CCX additionally contends, however, that the credibility concerns of the district court relating to McGillicuddy's testimony on the "terminated or resigned" issue are not before us, because CCX has not appealed from the court's holding on that issue.  We reject this argument, because it effectively asks us to ignore the numerous occasions throughout the district court's opinion in which the court expressly found that McGillicuddy was not a credible witness.

15

according to the same standards that the district court applied throughout the trial.

## III.

Next, we address the remaining issues raised by Rinaldi in his cross-appeal.[6] Rinaldi argues that the district court erred in denying his requests for attorneys' fees and costs. We address these issues separately.

## A.

As we stated in Williams v. Metropolitan Life Insurance Co., a district court in an ERISA action may, in its discretion, award reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), if that party has achieved "'some degree of success on the merits.'" ___ F.3d ___, No. 09-1025, slip op. at 17-18 (4th Cir. June 30 2010) (quoting Hardt v. Reliance Std. Life Ins. Co., No. 09-448, ___ U.S. ___, 130 S.Ct. 2149, 2152 (2010)). We review a district court's award of attorneys' fees to an eligible litigant to determine whether the court has abused its discretion. Williams, ___ F.3d at ___, slip op. at 17; Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 221 (4th Cir. 2005). The district court's factual findings in

---

[6] As discussed previously, we reject Rinaldi's argument that the district court erred in concluding that Rinaldi's travel reimbursement requests were "dishonest on [their] face."

16

support of such an award are reviewed for clear error. <u>Williams</u>, __ F.3d at __, slip op. at 17; <u>Hyatt v. Shalala</u>, 6 F.3d 250, 255 (4th Cir. 1993).

As required by the decision in <u>Hardt</u>, we first consider whether Rinaldi achieved "some degree of success on the merits" in the district court. Because the district court found in Rinaldi's favor and awarded him the severance benefits due under the Employment Agreement, we conclude that Rinaldi was eligible for an award of attorneys' fees. See <u>Hardt</u>, ___ U.S. at ___, 130 S.Ct. at 2158.

Although Rinaldi was eligible for an award of reasonable attorneys' fees, the district court retained the discretion to decline to award Rinaldi such fees. In <u>Williams</u>, we restated the familiar guidelines that assist a district court's discretionary determination whether attorneys' fees should be awarded to an eligible litigant. These guidelines include the following five factors:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

17

Williams, __ F.3d at __, slip op. at 19 (quoting Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc)).

In the present case, the district court considered these factors, and concluded that Rinaldi should not be awarded attorneys' fees. We disagree with Rinaldi's contention that the district court misapplied these factors.

Initially, we observe that these factors provide "general guidelines," rather than a "rigid test." Williams, ___ F.3d at ___, slip op. at 19; Quesinberry, 987 F.2d at 1029. In determining whether to award Rinaldi attorneys' fees, the district court was entitled to consider the fact that Rinaldi had engaged in some dishonest conduct to the prejudice of his employer, CCX. The district court also was permitted to consider the fact that because the Employment Agreement was drawn uniquely for Rinaldi, there were no other members of that plan who could have derived a benefit from Rinaldi's legal action. Further, because the plan was unique to Rinaldi, the deterrent value that an award of attorneys' fees would have for "other persons acting under similar circumstances" was less significant. Finally, the district court correctly concluded that there was no "significant legal question regarding ERISA itself" at issue.

In light of these considerations, we cannot conclude that the district court abused its discretion in declining to award Rinaldi attorneys' fees. We therefore affirm the district court's holding denying Rinaldi's request.

B.

We next address Rinaldi's argument that the district court erred in denying his request for costs. We agree with Rinaldi that there is a presumption in favor of awarding costs to a prevailing party. Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs "should be allowed to the prevailing party" unless a federal statute provides otherwise. See Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). As we stated in Williams, the ERISA statute does not alter this general rule in favor of presumptively awarding fees to the prevailing party, and instead expressly permits a district court to award costs in the court's discretion. ___ F.3d at ___, slip op. at 22 (citing 29 U.S.C. § 1132(g)(1)). We therefore agree with Rinaldi's argument that he was entitled to a presumption in favor of costs.

We observe that the district court did not afford Rinaldi this presumption. We also note that the district court did not conduct a separate analysis in declining to award Rinaldi costs. Instead, the district court analyzed the appropriate standard for an award of attorneys' fees, concluded that Rinaldi was not

19

entitled to attorneys' fees, and then summarily rejected Rinaldi's request for costs. The district court's treatment of Rinaldi's request for costs, therefore, conflicts with our holding in Teague v. Bakker, in which we stated that if a district court chooses to depart from the general rule favoring an award of costs to the prevailing party, the court must justify its decision by "articulating some good reason for doing so." 35 F.3d 978, 996 (4th Cir. 1994) (citations omitted). Because the district court did not state any reason for its decision, we reverse the district court's holding denying Rinaldi's request for an award of costs, and remand the case to the district court for reconsideration of Rinaldi's request in light of the standard that we have discussed here.

IV.

For these reasons, we reverse the part of the district court's judgment denying Rinaldi an award of costs, and remand

20

the case to the district court for reconsideration of that issue. We affirm the balance of the district court's judgment.[7]

AFFIRMED IN PART,
REVERSED IN PART, AND
REMANDED WITH INSTRUCTIONS

---

[7] Rinaldi has also requested an award of reasonable attorneys' fees and costs that he incurred in responding to CCX's appeal and in pursuing his cross-appeal. We observe that Rinaldi has failed to comply with the requirements of Federal Rule of Appellate Procedure 39(d) and Local Rules 39(b) and 46(e). Accordingly, we decline to consider Rinaldi's requests at this time.