Richard A. PARROTT, Plaintiff,

v.

Richard CHENEY, Secretary,
Department of Defense,
Defendant.

Civ. No. H–88–3486.

United States District Court,
D. Maryland.

Nov. 7, 1989.

John J. Connelly, Washington, D.C., for plaintiff.

Dale P. Kelberman, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

Presently pending before the Court in this civil action is defendant's motion for summary judgment. Plaintiff, a black male, has instituted this suit against his employer, the United States Department of Defense, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, claiming racial and sex discrimination and retaliation. Following the entry of a Scheduling Order and the completion of discovery by the parties, defendant filed a motion for summary judgment, contending, *inter alia*, that plaintiff has failed to establish a *prima facie* case of discrimination or retaliation under Title VII. For the following reasons, defendant's motion will be granted.

**1.** *See* Defense Mapping Agency Office of Distribution Service (DMAODS) Position Vacancy Announcement No. DMAODS 82–10.

## I  *Facts*

Plaintiff, a black male aged 47, is and has been employed in the Defense Mapping Agency of the United States Department of Defense. In May of 1982, plaintiff applied for a promotion. The position which was open was that of Product Management Specialist.[1] A three member rating and ranking panel selected a best qualified list of seven candidates, a list which included the plaintiff. On July 12, 1982, James A. Drake, also a black male and Chief of the Hydrographic Products Branch in which plaintiff worked, selected Ms. Delores E. Riordan, a Hispanic female, for the position.

On August 10, 1982, the plaintiff filed a formal grievance with the agency protesting his nonselection. Indeed, five of the seven applicants, including Ms. Margaret E. Mandish, a white female and the ultimate selectee for promotion, protested Drake's selection.[2] A grievance examiner investigated the selection and the promotion procedure and, on November 4, 1982, recommended that, because of procedural irregularities, another panel be convened and a new list of best qualified candidates be drawn up.

A new rating and ranking panel submitted a list of five candidates which included the plaintiff. On December 3, 1982, Drake, again the selecting official, chose Mandish based on her knowledge and understanding of hydrographic products, her experience in inventory management, a supervisor's appraisal, and her skills, abilities and personal characteristics. On January 6, 1983, after plaintiff learned that he had not been selected a second time, he filed another agency complaint of discrimination.

Plaintiff also filed an EEO complaint in April of 1983 claiming discrimination on the basis of race, age, and sex, and because of retaliation. The complaints were consolidated, and an EEO investigator from outside the agency reviewed plaintiff's claim.

**2.** Plaintiff also filed an EEO complaint on August 12, 1982 claiming race, age, and sex discrimination.

On December 3, 1983, the agency issued a Notice of Proposed Disposition concluding that no discrimination or retaliation had occurred.

Plaintiff then requested a hearing before an EEOC hearing officer, who submitted a recommendation on November 13, 1985 that discrimination had occurred in both selection processes and that retaliation had also occurred.[3] That recommendation was rejected by the agency. After considering the entire record, the agency rendered a Final Agency Decision dated December 20, 1985 finding no discrimination or retaliation in plaintiff's case. In making this decision, the agency reviewed the administrative record in the case, the hearing transcripts, and the recommendation of the EEOC hearing officer.

On January 23, 1986, plaintiff appealed to the EEOC Office of Review and Appeals, alleging that the agency had failed to render its final decision within the required 30 day period. *See* 29 CFR 1613.-220(d). On November 4, 1987, the Office of Review and Appeals vacated the Final Agency Decision, a decision which the agency disputed in a request to reopen and reconsider. Following reconsideration, the Office of Review and Appeals on June 10, 1988 vacated its decision of November 4, 1987 and reinstated the Final Agency Decision of December 20, 1985, which had determined that no discrimination or retaliation had occurred. Plaintiff then filed this civil action in the United States District Court for the District of Columbia claiming discrimination on the basis of race, age, sex, and retaliation.[4] On defendant's motion for change of venue, the case was subsequently transferred to this Court.

Defendant has now moved for summary judgment as to all of plaintiff's claims, asserting that plaintiff has failed to establish a *prima facie* case of discrimination or retaliation. Memoranda in support of and in opposition to the pending motion have been filed by the parties and reviewed by the Court. Oral argument has been heard. For the following reasons, defendant's motion will be granted.

## II *Summary Judgment Principles*

■ It is well settled that a defendant moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see also Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). This burden may be met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.*

One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick, supra,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Chief Judge Winter said in *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary

---

**3.** The hearing officer found that retaliation by Drake had occurred, but that Messrs. Garnes and Baden, officials of the EEO and Defense Mapping Agency, had not retaliated in attempting to persuade plaintiff to withdraw his EEO complaint following the removal of the first selectee.

**4.** Plaintiff at oral argument indicated that he was no longer pursuing his claim of age-based discrimination.

trial and by providing a speedy and efficient summary disposition.

In two cases decided several years ago, the Supreme Court clarified and expanded the principles applicable to a trial court's consideration of a summary judgment motion filed under Rule 56. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Anderson,* the Supreme Court held that the standard for granting a summary judgment motion under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P. 477 U.S. at 250–51, 106 S.Ct. at 2511. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512 (emphasis added).

In *Catrett,* the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323, 106 S.Ct. at 2552 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule.Civ.P. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555.

More recently, the Fourth Circuit in *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126 (4th Cir.1987) discussed the Supreme Court's holdings in *Anderson* and *Catrett.* Judge Wilkinson emphasized in *Felty* that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* at 1128 (quoting *Celotex, supra,* 477 U.S. at 323–24, 106 S.Ct. at 2553).

Applying these principles to the facts of record here, this Court concludes that defendant's motion for summary judgment must be granted.

### III   *The Prima Facie Case*

■ The Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) set forth the general requirements for establishing a *prima facie* case of discrimination in disparate treatment cases brought under Title VII. The Court outlined the standards in the following language:

> The complainant in a Title VII trial must carry the initial burden under the Statute of establishing a *prima facie* case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. In a footnote, the Court added that the facts in Title VII cases will vary and that the four particular factors outlined above might not apply in every respect to different factual circumstances. *Id.* at 802, n. 13, 93 S.Ct. at 1824, n. 13.

In *Holmes v. Bevilacqua*, 794 F.2d 142, 147 (4th Cir.1986), the Fourth Circuit considered application of the *McDonnell Douglas* four prong scheme to a case in which, unlike the facts of *McDonnell Douglas*, the position for which the complainant applied did not remain vacant after the complainant was rejected. In a failure-to-promote case in which the position had been filled by a person other than the plaintiff, the Fourth Circuit substituted as a new fourth prong the requirement that a plaintiff, as a part of his *prima facie* case, "present some evidence that his race was a factor considered by his employer in not granting him the promotion." *Holmes*, 794 F.2d at 147. The Court articulated the necessity of evidence of discrimination as follows:

> Without the fourth prong of the *McDonnell Douglas* proof scheme, any qualified minority applicant who is denied promotion could make out a *prima facie* case by merely proving his race, his qualifications and his failure to be promoted. The proof of the first three prongs of the scheme only set the stage for the fourth, which tips the scales in favor of a *prima facie* case, because the fourth prong requires proof that points towards illegal discrimination.

*Id.*

In *Holmes*, the Fourth Circuit held that the plaintiff had not made out a *prima facie* case of discrimination because the plaintiff had not presented any indirect or direct evidence of racial discrimination. *Id.* Concluding that the plaintiff at trial had furnished merely proof of his race and of the denial of promotion, the Fourth Circuit affirmed the district court's ruling, which had granted defendant's Rule 41(b) motion to dismiss at the close of plaintiff's case. *Id.*

In other decisions, the Fourth Circuit has applied the *Holmes* test to disparate treatment cases which have been decided by way of a motion to dismiss. *See Autry v. North Carolina Dept. of Human Resources*, 820 F.2d 1384 (4th Cir.1987) (motion to dismiss granted); *Lucas v. Dole*, 835 F.2d 532 (4th Cir.1987) (Fourth Circuit reversed grant of motion to dismiss because *Holmes* test had been met). It is apparent from these decisions that, to make out a *prima facie* case in a Title VII action alleging disparate treatment, a plaintiff must present some evidence that race was a determining factor in the employer's decision that he not be promoted.[5]

## IV  *The First Selection Process*

The Court would note at the outset that this case differs markedly from other Title VII cases brought in this and other courts. Plaintiff, a black male, is here contending that Drake, another black male, discriminated against him on the basis of both his race and his sex. The individual charged with discrimination in this case is therefore of the same race and sex as the plaintiff. While discrimination of the sort alleged may well be possible, plaintiff has not cited and the Court is not aware of any case in which the facts were similar to those here and in which discrimination was found.

Plaintiff initially contends that discrimination occurred in the first selection process and that he has not received complete relief because he has not received the retroactive promotion, back pay, or the attorney's fees he requested in his initial EEO complaint. This argument is without merit.

First, plaintiff has produced no evidence of discrimination in the first selection process. Plaintiff asserts that the alleged discriminating official had a special relationship with the first selectee and performed special favors for the selectee. Even if these facts are true, favoritism towards one individual does not constitute discrimination actionable under Title VII. *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir.1989).

Second, even if the first selection process was discriminatory, the plaintiff has received complete relief. After the grievance officer determined that procedural irregularities had occurred, the agency removed the first selectee and considered plaintiff for promotion in the second selection pro-

---

5. The same requirement must be met by a plain-   tiff presenting a claim of sex discrimination.

cess. Plaintiff was thus returned to the same position he occupied prior to the alleged discrimination. Had plaintiff rather than Ms. Riordan been selected for the position, his selection would have been overturned because of procedural irregularities in the convening of the panel and the preparation of a list of qualified candidates.

As a general principle, Title VII operates "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). A plaintiff is made whole for injuries suffered when the plaintiff is restored to the position he or she would have occupied but for the discrimination. *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 618 (4th Cir.1984), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984), citing *Patterson v. Greenwood School Dist. 50*, 696 F.2d 293, 295 (4th Cir.1982). As the *Smallwood* court stated, the right to relief is as follows:

> the right ... does not exist if the claimant would not have been hired absent discrimination ... because such right is authorized not as punishment for the defendant or as a windfall for the plaintiff but only to put the plaintiff in the same position, *but in no better position* than he would have been had there been no discrimination.

*Smallwood*, 728 F.2d at 618, n. 7 (emphasis in original).

The grievance examiner determined that the first rating and ranking panel had committed a number of procedural irregularities and that the ranking of the candidates was defective. No valid promotion could thus have resulted from this flawed list of candidates, and plaintiff therefore cannot now claim that he should have been selected from this list.[6] To allow retroactive promotion and back pay would be to give the plaintiff the type of windfall against which the *Smallwood* court cautioned. Insofar as the first selection process is concerned, plaintiff has received all the relief to which he is entitled.

### V  The Second Selection Process

As to the second selection, plaintiff has not produced any evidence that race or sex was a factor in the promotion decision. Plaintiff argues that he had fifteen (15) years experience in the relevant field while the eventual selectee, Ms. Mandish, had only ten (10) years experience, and that in all other respects Mandish and he had similar qualifications.[7] At his deposition, plaintiff was unable to state any facts which tended to demonstrate that race was a factor in his nonpromotion. In addition, plaintiff stated during deposition testimony that Ms. Mandish was "well-qualified" for the position and that the second interview and selection process were fair. Plaintiff simply cannot point to evidence in this record to support his allegations of race and sex discrimination.

The facts here parallel quite closely the facts of the *Holmes* case. In *Holmes*, the plaintiff, a black male, applied for a vacant position and survived two screening processes before being chosen as one of five finalists. The ultimate selectee, a white male, was chosen although he had less experience and had ranked slightly lower than the plaintiff among the five finalists chosen during the screening process. The plaintiff in *Holmes* testified at trial that all of the candidates were well-qualified, just as the plaintiff in this case testified at his deposition that Ms. Mandish was well-qualified. In *Holmes*, as in this case, the plaintiff could not produce evidence which demonstrated that race was a determining factor in the employer's decision. As in

**6.** Plaintiff himself had claimed that the initial selection and promotion procedure was defective and would not be permitted to now assert that his name was properly included on a procedurally adequate list.

**7.** The plaintiff cites the following facts in support of his discrimination claim: (1) that he had outstanding performance evaluations the year prior to the promotion process, (2) that the interviews of him and the eventual selectee were comparable, and (3) that the communications skills of the two were equally above average. None of these facts supports a finding of race or sex discrimination.

*Holmes,* plaintiff cannot make out a *prima facie* case of discrimination.

### VI  *Retaliation*

■ In order to establish a claim of retaliation, a plaintiff must make the following showing:

> The employee is initially required to establish a *prima facie* case of retaliation by a preponderance of the evidence. Such a *prima facie* case consists of three elements: 1) the employee engaged in protected activity; .2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). The burden of establishing a *prima facie* case is not onerous. *Ross,* 759 F.2d at 365, quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and once the *prima facie* case is made out, an employer must produce a legitimate nondiscriminatory reason for the adverse action to rebut the presumption of retaliation. *Id.* If an employer does so, the "employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual." *Id.* The *Ross* court stated the test for proving pretext as follows:

> for the employee to disprove a legitimate nondiscriminatory explanation for adverse action ... he must show that the adverse action would not have occurred "but for" the protected conduct.

*Id.* at 366. Thus, for plaintiff to disprove the legitimate nondiscriminatory explanation proffered by defendant in this case or its action, he must show that the protected activity in which he engaged was the determining factor in his employer's decision.

■ Relying on *Lewis v. AT & T Technologies,* 691 F.Supp. 915, 922 (D.Md.1988), plaintiff points to the temporal proximity between his filing of an agency grievance on August 10, 1982, his filing of an EEO complaint on August 12, 1982, and Drake's selection of Ms. Mandish on December 5, 1982. This Court concludes that such evidence is not sufficient to prove that a causal connection existed between the protected activity and the adverse action. Plaintiff ignores the fact that four of the five candidates in the second selection process had also filed grievances with the agency protesting the first selection process. Indeed, Ms. Mandish was selected for promotion despite the fact that she was among the four candidates who had filed an agency grievance. No inference of causation can arise under this set of facts since plaintiff's grievance was simply one among many, and since the second selectee was chosen even though she protested as well.

■ Even if these facts would support such an inference and would thereby permit plaintiff to make out a *prima facie* case, defendant's motion for summary judgment must still be granted as to the claim of retaliation. The record here establishes that the selecting official articulated legitimate, nondiscriminatory reasons for Ms. Mandish's selection over plaintiff. Drake chose Ms. Mandish because of her knowledge and understanding of hydrographic products, because of her experience in inventory management and supply disciplines, because of her supervisor's appraisal, and because of her over-all skills and personal characteristics. Indeed, plaintiff in his deposition stated that he believed Ms. Mandish to be a "well-qualified" candidate. He further stated that he believed that the second selection process was conducted fairly. On the record here, plaintiff has not proven retaliation because he has not met his burden of showing that the employer's reasons for its action were pretextual. Plaintiff cannot meet the "but for" test as required by *Ross,* and his claim of retaliation must likewise fail.

### VII  *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment will be granted. An appropriate Order will be entered by the Court.