**Dave E. CROSS, Plaintiff,**

**v.**

**BALLY'S HEALTH & TENNIS CORPORATION, Defendant.**

**Civil No. K–95–1476.**

United States District Court, D. Maryland.

Nov. 19, 1996.

[redacted]

claims. *See Tai Ping Ins. Co. v. M/V WARSCHAU,* 731 F.2d 1141, 1146 (5th Cir.1984).

Francis J. Collins, Baltimore, MD, for Plaintiff.

Richard T. Sampson, Christopher W. Poverman, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

(1) On May 17, 1995, plaintiff, ("Cross") filed a complaint alleging that his former employer,[1] Bally's Health and Tennis Corporation ("Bally's"), discriminated against him in violation of 42 U.S.C. § 1981 and § 1981(a) ("Section 1981") by treating him differently on the basis of race, and retaliated against him for complaining about violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and the Maryland Wage and Hour Law, MD. LABOR AND EMPLOYMENT CODE ANN. § 3–428(a)(3) (1991). Bally's seeks summary judgment which Cross opposes. After full review of the sizeable factual record and counsels' submissions, this Court will grant defendant's motion.

(2) *Summary Judgment Standard:* Summary judgment is appropriate where "there is no genuine issue of material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). The non-moving party is entitled to have "all reasonable inferences ... drawn in [its] favor." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987). The non-movants, however, " 'may not rest upon the mere allegations or denials of [their] pleadings' but instead 'must set forth specific facts showing that there is a genuine issue for trial.' " *Felty,* 818 F.2d at 1129 (citing Fed. R.Civ.P. 56(e)). Even in discrimination cases where motive and intent are critical to the analysis, "summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (citation omitted).

■ (3) *Racial Discrimination Claim:* Cross asserts disparate treatment under Section 1981, and not under Title VII. However, the standard for establishing disparate treatment in violation of either statute is the same. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989); *Gairola v. Commonwealth of Virginia Dep't of General Serv.,* 753 F.2d 1281, 1285–86 (4th Cir.1985). Accordingly, this court will treat Cross's disparate treatment contentions under both statutes.

■ A successful racial disparate treatment claim requires that the plaintiff establish that he was subjected to some negative employment action on the basis of race. Cross asserts that he was treated differently than other employees in several situations; however, his submissions focus almost exclusively on Bally's allegedly disparate treatment of him in connection with enforcement of Bally's "lateness policy." That lateness issue is the only one of Cross's factual disparate treatment contentions which is even arguably substantial.[2]

---

1. Cross began his employment as a collections representative in December 1990 with the National Bureau of Credit, later known as National Recovery Services, a former separately incorporated division of Bally's. (Cross Dep. at 10, 27.) In August 1994, National Recovery Services was abolished and approximately 15 employees, including Cross, were transferred to another division of Bally's, the Financial Services Department. (Conn Dep. at 12.) Those transferred started in the Financial Services Department with clean attendance records as their past attendance "occurrences" were wiped clean. (Conn.Dep. at 31–32). Of those transferred, 11 or 12 were African–Americans. (Ford Dep. at 66–67.) Thirty other employees were laid-off, including all employees in "final warning" status. (Ford Dep. at 66.) Some of the laid-off employees were African–Americans and others were white. (Cross Dep. at 33–34).

2. Cross asserts that on October 24, 1994, he and three other employees returned from lunch three minutes late, and that he alone was reprimanded for tardiness. However, the record indicates that one of the other three employees was, in fact, reprimanded for tardiness; a second was,

The success of Cross's disparate treatment claim depends on his ability to link the defendant's negative employment actions to a discriminatory animus on the part of the defendants. Cross may satisfy that burden either by way of direct evidence, or under the judicially recognized method of proof created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. As set forth below, Cross fails in both regards.

■ To succeed under the *McDonnell Douglas* approach, Cross must show that similarly situated non-African-American employees were treated differently than he was "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 511 (4th Cir.1993). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Cross, an African–American, is within a class protected by Title VII. Moreover, his prohibited conduct, repeated lateness in violation of Bally's clearly articulated policy, was arguably comparable in seriousness to similar conduct of non-African-American employees. However, Cross must also establish that the disciplinary measures taken against him were dissimilar from those enforced against his co-workers.

Cross makes an effort to do so by presenting a "time card analysis" which consists of a list of names (presumably of employees), dates, and plaintiff's own cryptic interpretations of the time cards of those individuals on the listed dates (e.g. "Karen Abramson, 9/13/94 Left Early. Was paid for eight hours; 9/14/94 Left Early. 12:30 p.m.; 9/15/94 19 minutes late; 9/16/94 Punched in at 9:24 a.m. Punched out at 2:24 p.m. She was paid for nine hours (Remarks: 2:25 p.m. punched out at 7:00 p.m)).[3] Cross's time card analysis does not reveal that the disciplinary measures taken against him were dissimilar from those enforced against other employees. In that regard, the "analysis" fails (1) to indicate the race of any of the employees listed; (2) to explain how the various shifts and schedules to which each listed employee may have been assigned on any given day, affected the application of Bally's lateness policy; or (3) to reveal what, if any, disciplinary measures were or were not taken against the employees in connection with the time cards. Moreover, during the same period in which Cross accumulated his repeated occurrences in violation of Bally's policy, Bally's fired a non-African-American employee who had accumulated more lateness occurrences than allowed under the attendance policy. (Conn Dep. at 96–97). While the time card records may show that the company was more lenient with some employees than with others, such leeway, along with the aforementioned termination of a non-African-American for excessive lateness, does not add up to sufficient evidence to support any

due to his work schedule, entitled to a longer lunch period, and therefore, was not late at all; and the third was not reprimanded. (*See* Ford Aff. at ¶ 2.) Even if the third employee's actions did constitute a lateness which could have been charged under the employer's policy, the fact that at least one other employee, the first of the three said employees, was disciplined, undercuts Cross's claims that he was singled out.

In addition to his lateness arguments, Cross makes assertions of other incidents of alleged disparate treatment, including (1) his supervisor called him at home during an illness, which Cross states was not done with other employees; (2) a passing supervisor apparently saw Cross taking a personal telephone call in another supervisor's office and inquired what Cross was doing, even though Cross had obtained another supervisor's permission to accept the call and even though another employee was not so interrupted; (3) Cross's supervisor complained about his scheduling medical appointments during working hours and did not so complain concerning other employees. (Cross Aff. at ¶¶ 13, 17, 20).

3. The undersigned Judge of this Court notes that Judge Legg of this Court, to whom this case was previously assigned, granted plaintiff great leeway in connection with his discovery requests for records which might indicate disparate treatment with respect to the application of lateness rules.

meritorious claim of discrimination on racial grounds.

■ However, even if Cross is given the benefit of the doubt, and one assumes that he has presented a prima facie case of such discrimination, the *McDonnell Douglas* approach then shifts the burden to the employer to articulate some legitimate, nondiscriminatory reason for the discipline of the plaintiff. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In that connection, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (citation omitted). Bally's contends that Cross was terminated because he had accumulated four occurrences under its attendance policy. That attendance policy, of which Cross was well aware, provides for dismissal upon the fourth "occurrence" of tardiness in a ninety day period. (See Mot. for Summ.J.Ex. D.) Under the policy, two occurrences warrant a first warning, and a third occurrence merits a final warning. Bally's asserts that Cross actually was late on five occasions, one of which was waived by Bally's, and that it was after the fifth occurrence that Cross was terminated.[4] The record indicates that Cross was warned of each of his violations of the policy. While Cross challenges the business necessity of requiring compliance with the timeliness policy, he does concede that each and all of the said occurrences did, in fact, occur. (Cross Dep. at 94.)

As Bally's has met its burden of establishing a legitimate, non-discriminatory reason for Cross's discharge, Cross is left with the ultimate burden of proffering sufficient evidence that he has been the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). That Cross has not

done. In order to rebut Bally's legitimate nondiscriminatory reason for its actions, Cross must submit to this Court substantial direct evidence "that a discriminatory reason more likely motivated [Bally's] or ... show[ ] that [Bally's] proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (citation omitted). As discussed, *supra,* Cross has not presented any non-conclusory direct evidence that Bally's actions were motivated by racial bias. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989) (citation omitted).

■ Moreover, while Cross now proffers excuses for his lateness, and challenges the legitimacy of the defendant's attendance policy as a business practice, he is unable in any way to establish that Bally's explanation of his termination for repeated violations of the attendance policy is unworthy of credence.[5]

In sum, Cross's disparate treatment claim cannot survive defendant's pending summary judgment motion, and this Court will grant that motion with respect to Cross's discrimination contention, whether based upon direct evidence or stated pursuant to *McDonnell Douglas.*

■ (4) *Federal Retaliation Claims:* Cross alleges Bally's violated both Title VII and the FLSA by discharging him in retaliation for complaints about (1) alleged race discrimination, as discussed *supra,* and/or (2) federal and state wage and hour requirements. The burden of proof analysis concerning retaliation with respect to Title VII and the FLSA is the same. *See Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 876 (2d Cir.1988) (the allocations of burdens of proof in an FLSA retaliation case follow the three-step structure of *McDonnell Douglas*);

---

**4.** Those occurrences happened on October 5, 14 (waived), 24, 28 and November 19, 1994.

**5.** This Court notes that Bally's is free to adopt even idiosyncratic policies to govern the workplace, so long as they are non-discriminatory, which the clearly articulated attendance policy at

issue herein appears to be. "The question of whether the employer's policies or decisions are harsh, unfair, or inappropriate is not at issue, absent some showing of discrimination." *Warren v. Halstead Indus., Inc.,* 802 F.2d 746, 755 (4th Cir.1986).

*Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 387 (10th Cir.1984) (retaliatory discharge actions under Title VII and the FLSA are analyzed under the same legal standards). Thus, in order to sustain a retaliation claim under either Title VII or the FLSA, Cross must establish three elements in order to set forth a *prima facie* case—first, that he engaged in protected activity; second that Bally's took adverse employment action against him; and third, that a causal connection existed between the protected activity and the adverse action and that the latter would not have occurred "but for" the former. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). The first two of those elements are relatively uncontroversial in the within case.

Cross asserts that he engaged in protected activity on, at least two, and possibly, three occasions. The first alleged protected activity participated in by Cross occurred in October 1991, when Cross had an attorney write to Cross's employer regarding alleged violations of both the FLSA and Maryland statutory law for failure of the employer appropriately to pay Cross for overtime work. Aside from a brief period of correspondence between Cross's attorney and his employer, it appears that Cross did not pursue those alleged violations further.[6] While there is no dispute that such written exchange occurred, there is a question of whether such limited actions are even protected by the FLSA. (*See* Mot. for Summ.J. at 7 n. 8.) The FLSA's retaliation provision makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on any industry committee." 29 U.S.C. § 215(a)(3). Cross did not, in 1991, institute any court or administrative proceeding or even file a complaint with any governmental agency. However, assuming, without deciding, that Cross's 1991 actions in

relation to the alleged FLSA violation did constitute a protected activity, there are other hurdles, which are discussed *supra*, which Cross must surmount in order for his contentions of retaliation with respect to the 1991 matter to survive defendant's summary judgment motion.

The second alleged protected activity which Cross points to arises out of a 1993 complaint alleging race discrimination which Cross filed with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Human Relations Commission ("MHRC"). Those matters were apparently resolved via a settlement agreement in April 1993. (*See* Pl.'s Resp. to Mot. for Summ. J.Ex. 11). The third instance of Cross's alleged protected activity began in September 1994 when Cross asserts that he again contacted the MHRC regarding concerns about race discrimination and retaliation of some kind. However, at that time, Cross apparently chose not to pursue his complaint with the MHRC, though perhaps on the advice of the MHRC, he may have resorted to the use of Bally's internal grievance process.[7]

The second element which an employee alleging retaliation must show in order to establish a prima facie case of retaliation is an adverse employment action. Here, in that regard, Cross can successfully point to his termination. The third element, namely, a causal connection between the protected activity and the adverse employment action, is one which poses more difficulty for Cross. Bally's asserts that due to the lapse of time, Cross cannot show a sufficient causal connection between the October 1991 and Spring 1993 events and his termination in November 1994. In *Garrett v. Lujan*, 799 F.Supp. 198 (D.D.C.1992), the court observed that "[w]hile a causal nexus is inferred when the adverse employment action occurs shortly after participation in a protected activity," such inference is not appropriate when the time interval is too great. *Id.* at 202 (concluding that the passage of nearly a year

---

6. Cross explains that he failed to pursue those matters because the amount of money at stake in connection with the 1991 correspondence was small. (Compl. Count III at ¶ 2).

7. According to the Complaint, after his termination Cross formalized a complaint with the MHRC and possibly the EEOC as well. (Compl. at ¶ 13.)

precluded an inference of causal connection); *see Parrott v. Cheney,* 748 F.Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negative causal connection in a particular factual context), *aff'd per curiam,* 914 F.2d 248 (4th Cir.1990).

The September 1994 internal complaint (lodged approximately two months prior to Cross's termination) constitutes Cross's strongest possible prima facie case of retaliation. Under *Carter v. Ball,* 33 F.3d 450 (4th Cir.1994), while a four month gap between a charge of discrimination and the employee's termination was "strongly suggestive of retaliatory motive and thus indirect proof of causation ... 'mere knowledge on the part of an employer that an employee ... has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel actions against that employee." *Id.* at 460 (quoting *Williams v. Cerberonics, supra* at 457). While *Carter* involved the filing of actual complaints with the EEOC, and the instant case only involved an internal complaint, viewing the record in the light most favorable to the plaintiff, this Court will assume, *arguendo,* that Cross has established a prima facie case of retaliation.

■ However, even with that assumption existing in his favor, Cross's claim cannot survive the next step, which, as discussed in paragraph (3) *supra,* provides that "the employer then has the burden of producing a legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation raised by the prima facie case." *Ross,* 759 F.2d at 365. As discussed *supra,* Bally's has proffered more than sufficient evidence, even in the existing summary judgment context of this case, that Cross was terminated because of excessive lateness in violation of company policy.

■ Because Bally's has submitted a legitimate nondiscriminatory explanation for terminating Cross, Cross bears the ultimate burden of proving retaliation by sufficiently proffering that Bally's asserted reason is pretextual. In order for an employee to "disprove a legitimate nondiscriminatory explanation for adverse action ... he must show that the adverse action would not have occurred 'but for' the protected conduct." *Ross,* 759 F.2d at 365. Here, Cross is unable, in light of his record of lateness, to show that he would not have been terminated "but for" his protected conduct. That is because the facts indisputably disclose that Cross was terminated for violations of the employer's lateness policy. Therefore, in the end, Cross has failed to meet the level of proof required by *Ross* to avoid summary judgment. Accordingly, this Court will grant defendant's Motion for Summary Judgment in connection with Cross's federal retaliation claims.

■ (5) *State Retaliation Claims:* Cross additionally asserts that his termination was the result of retaliation against him for complaining in 1991 about an alleged violation of the Maryland Wage and Hour Law. The Maryland Wage and Hour Law prohibits "discharge of an employee because the employee ... makes to the employer ... a complaint that the employee has not been paid in accordance with the [statute]." MD. LABOR AND EMPLOYMENT CODE ANN. § 3–428(a)(3) (1991). As with the alleged FLSA violation discussed above, Cross does not assert that he took any action other than asking his attorney to write a demand letter to his employer in connection with the alleged statutory violation. Assuming that Cross's said action constitutes the making of a complaint to his employer under the Maryland statute, the question arises as to whether Cross's said state law claim is preempted by the FLSA. (*See* Mot. for Summ.J. at 7 n. 8.) In asserting such preemption, Bally's points to two cases in which it was determined that the FLSA preempts such state law claims. However, unlike the instant case, in the cited cases, the state law claims appear not to have arisen under state wage and hour statutes, but rather under state common law principles. *See Morgan v. Future Ford Sales,* 830 F.Supp. 807 (D.Del.1993) (employer allegedly violated breach of implied covenant of good faith and fair dealing); *Tombrello v. USX Corp.,* 763 F.Supp. 541, 545 (N.D.Ala.1991) (employee asserted state law claims for payment of wages and invasion of privacy). In

light of that distinction and the apparent lack of case law directly on point, this Court will not reach defendant's preemption claim, particularly since that issue need not be reached. That is because, even if plaintiff's Maryland statutory claim is not preempted by the FLSA, it appears that Maryland's courts would apply the same criteria as used in the FLSA cases to determine if retaliation occurred. *See Chappell v. Southern Maryland Hosp.*, 320 Md. 483, 495–97, 578 A.2d 766 (1990). Therefore, for the same reasons set forth *supra* regarding Cross's failure to establish a causal connection between the 1991 correspondence and the 1994 termination in connection with Cross's claims of retaliation with regard to the FLSA, this Court will grant summary judgment to the defendant in connection with Cross's Maryland Wage and Hour retaliation claim.

(6) In a separate Order of even date herewith, this Court is entering judgment for the Defendant upon each and all of plaintiff's claims in this case, for the reasons set forth in this Memorandum and Order.

(7) Copies of this Memorandum and Order and of the said separate Order are today being mailed to counsel of record.

(8) It is so ORDERED, this 19th day of November, 1996.

## JUDGMENT ORDER

Judgment is hereby entered for defendant in connection with each and all of plaintiff's allegations in this case.