**Darrell MIDDLETON (Plaintiff)**

v.

**FRITO–LAY, INC. (Defendant)**

**No. CIV. A. HNM–98–1300.**

United States District Court,
D. Maryland.

Sept. 27, 1999.

Darren Margolis, Bierer, Shar, Ellentoff, Baltimore, MD, for plaintiff, Darrell Middleton.

John P. Lohrer, Collier, Shannon, Rill & Scott, Washington, D.C., for defendant, Frito–Lay, Inc.

## MEMORANDUM AND ORDER

MALETZ, Senior Judge.[1]

On April 27, 1998, Darrell Middleton filed a complaint alleging that his employer, Frito–Lay, Inc. (herein Frito–Lay), discriminated against him in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (herein Title VII). Defendant seeks summary judgment on all counts of the complaint. After careful review of the record, the motion for summary judgment is granted.

### I.

Plaintiff was hired as a Sanitation Operator at Frito–Lay in Aberdeen, Maryland on March 13, 1996. In his first few months on the job, his work was satisfactory and in June of 1996, he received a favorable performance evaluation from his supervisor, Tom Searfoss. Shortly thereafter, on July 16, 1996, Middleton was involved in an altercation with fellow employee, Larrie Horkey. Searfoss was away from the plant on the day the incident occurred, but after investigating the matter, he issued a written warning to Horkey, a white employee, and placed Middleton, who is black, on a Decision Making Leave (herein DML), which is a one day suspension without pay. Middleton, alleges that he was punished more severely because of his race. Searfoss explained that he disciplined Middleton more severely, because he found that Middleton was the instigator of the argument. In a statement authored by Searfoss, and signed by both Searfoss and Middleton, Middleton is named as both the instigator and aggressor of the incident.

Middleton further maintains that he was subject to disparate treatment in the context of the company's attendance policy. He argues that his white co-workers, who had attendance records comparable to or worse than his, were treated with more leniency while he was placed on a DML and ultimately fired for his poor attendance.

Next, Middleton contends that he was subjected to a hostile work environment. He claims that he was harassed by Searfoss who: 1) threatened to suspend him if he missed physical therapy appointments; 2) called him at home to check on him while he was out recovering from injuries sustained in a car accident; 3) threatened to have a hand writing expert check the authenticity of a doctor's note produced by Middleton; 4) denied him the opportunity to work on Martin Luther King, Jr.'s birthday; 5) forbad him from parking in front of the building; and 6) required him to leave a time-stamped voice mail message when he arrived at work. He further maintains that he was harassed and "monitored" by other supervisors. In short, Middleton argues that the totality of these circumstances created a hostile work environment.

Lastly, the plaintiff claims that Frito–Lay retaliated against him when he complained about the alleged harassment and discrimination he was experiencing. He argues that his termination was a retaliatory act by Frito–Lay.

### II.

Summary judgment is appropriate when the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). All reasonable inferences must be drawn in favor of the non-moving party, *see e.g. Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); however, the opposing party cannot create a genuine issue of material fact through mere speculation and bald allegations. *See e.g. Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985). Although em-

1. Of the United States Court of International Trade, sitting by designation.

ployment discrimination cases, by their nature, involve allegations as to motive and intent, "[t]he fact that motive is often the critical issue...does not mean that summary judgment is never an appropriate vehicle for resolution." *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1981). "Unsupported allegations as to motive do not confer talismanic immunity from Rule 56." *Id.*

## III.

■ The standard for establishing claims of employment discrimination under either Title VII or § 1981 is the same. *See Gairola v. Commonwealth of Virginia Dep't of General Serv.*, 753 F.2d 1281, 1285–86 (4th Cir.1985). Therefore, the analysis that follows, though couched in terms of Title VII, applies equally to plaintiff's § 1981 claim.

### A. Disparate Treatment

■ The burden-shifting sequence of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) is a three step process that first requires the employee to establish a prima facie case of discrimination. In order to establish a prima facie case of disparate treatment under Title VII the employee must show:

> 1) that he is a member of the class protected by Title VII, 2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and 3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993). If the employee succeeds in establishing the prima facie case, then the burden shifts to the employer to articulate a non-discriminatory reason for the difference in disciplinary action. *See id.* If the employer is able to advance a non-discriminatory reason, the burden again shifts to the employee to demonstrate, not only that the employer's reasons are merely pretextual, but that the actual reason for the disparate treatment is the employee's race. *See id.*

■ Initially, the court must decide if the plaintiff has made a prima facie showing. Clearly Middleton has established that he is a member of a protected class, as he is a black male. The second and the third elements of the prima facie case however, require closer scrutiny. Middleton uses the altercation with Larrie Horkey and the company's attendance records to illustrate that he was treated more harshly than his white co-workers for comparable conduct.

The plaintiff maintains that he was not the instigator of the argument between himself and Horkey. He alleges that Horkey was spreading rumors about the plaintiff, saying that he falsified his time sheets. Middleton claims that he approached Horkey to discuss the situation with him and that is when the two became involved in a heated argument in which Horkey allegedly used abusive language and threatened to shoot Middleton. The plaintiff argues that, at the very least, Horkey's conduct was comparable to, if not worse than his.

Tom Searfoss, Middleton's supervisor, was not present when the argument took place; however, he testified in his deposition that he interviewed witnesses and, based on their version of the facts, determined that Middleton was the aggressor. Further, the defendant points to a memorandum signed by Middleton which explicitly states that Middleton was, in fact, the instigator and aggressor of the argument. Given these facts, the defendant argues, the plaintiff has failed to show that his conduct, with respect to the altercation, was comparable to Horkey's. The defendant maintains that Middleton was more

culpable because he, in fact, started the argument.

Furthermore, Middleton also claims that Frito–Lay engaged in disparate treatment when administering discipline under the attendance policy. Plaintiff argues that at the time he was terminated by Frito–Lay for attendance problems, Horkey, as well as two other white employees, had equally poor attendance records, but were not terminated. He also maintains that Horkey's absences were often excused, and not counted as "incidents" [2] on his attendance record; thus, it took Horkey longer to acquire the six incidents necessary for termination. Middleton acknowledges that Horkey was terminated, but argues that he enjoyed nine more months of employment than Middleton due to the preferential treatment he received.

In response to the allegations of disparate treatment in the context of the attendance policy, the defendant argues that both Horkey and Middleton benefitted from having incidents removed from their attendance records. Further, defendant claims that any difference in the administration of the attendance policy were "so slight as to be readily attributable to Defendant's making the same kind of allowances for the white employees as it did for Plaintiff."

The court first notes that both parties, in discussing the fight between Horkey and Middleton, rely on little more than hearsay from alleged eye witnesses. The record does not contain any testimony from any eye witness, other than Middleton himself; therefore, it is difficult to determine if Middleton was or was not the instigator of the fight. If he did, in fact, start the confrontation, the court could easily find that the two were not engaged in comparable conduct; but, given the scant record, the court is unable to make such a determination.

The record surrounding the attendance issue provides the court with a little more guidance. It is evident that both Middleton and Horkey had certain attendance incidents removed from their records. Horkey's two day absence [3] following the altercation with Middleton was excused, while Middleton was given the benefit of having three incidents removed from his record.[4] The record further indicates that at the time of plaintiff's termination, in January of 1997, he had acquired at least six incidents, clearly enough for termination under the Frito–Lay policy. During this time frame, Horkey had also acquired at least six incidents, and although the record is not very clear as to exactly when Horkey was terminated, it is clear that he was in fact terminated for his attendance record. Additionally, on September 2, 1997, several months after plaintiff's termination, Kory Garrison, a white employee, accumulated six and two-thirds incidents but was only issued a written reminder.

The facts of *Cross v. Bally's Health & Tennis Corp.*, 945 F.Supp. 883 (D.Md. 1996), are quite similar to those of the instant case. Cross argued that he was treated differently than other employees in connection with Bally's lateness policy, and he attributed the disparate treatment to his race. However, the record in *Cross* reflected that a non-African American employee was fired for arriving late to work more often than allowed under the attendance policy. Additionally, the record demonstrated that the company was more lenient with some employees than with others. In light of these facts, Judge Kaufman found that the plaintiff was un-

---

**2.** An "incident" is noted on an employee's record when there has been a violation of a company policy or rule.

**3.** Although Horkey was absent for two consecutive days, it was considered only one incident on his record.

**4.** One stemming from May 25, 1996, one from August 9, 1996 and one from July 7, 1996.

able to make a prima facie showing of discrimination, holding that:

> While the time card records may show that the company was more lenient with some employees than with others, such leeway, along with the aforementioned termination of a non-African-American for excessive lateness, does not add up to sufficient evidence to support any meritorious claim of discrimination on racial grounds.

*Id.* at 886–87.

This court agrees with Judge Kaufman's reasoning, and questions whether a prima facie case can be supported with such limited proof. However, even assuming, without deciding, that the plaintiff has made a prima facie showing, the plaintiff still cannot survive summary judgment for he fails to demonstrate that his dismissal was pretextual and based on his race.

The court finds that the defendant has articulated a non-discriminatory reason for terminating Middleton, that being continued violations of the attendance policy. The record demonstrates that under Frito–Lay's "Presenteeism Program" an accumulation of six or more incidents on one's record is punishable by termination. Further, the record indicates that Middleton was terminated upon receiving his sixth incident. Given these facts, the burden shifts back to the plaintiff to demonstrate that the reason articulated by defendant is but a pretext and that the true reason for Middleton's termination was his race. The court finds that the plaintiff has failed to meet this burden.

■  In disparate treatment cases, pretext is commonly demonstrated through comparison with other employees who were similarly situated to the plaintiff. *See e.g. Alvarado v. Board of Trustees,* 928 F.2d 118 (4th Cir.1991); *Cook v. CSX Transp. Corp.,* 988 F.2d 507 (4th Cir.1993). Middleton points to three employees (Pat-

rick MacEmcy, Kory Garrison, and Larrie Horkey), who he claims had comparable, if not worse, attendance records than he, but received more favorable treatment. However, the record indicates that Patrick MacEmcy only acquired a maximum of five and a third incidents and was given both verbal and written warnings on several different occasions.

Another white employee, Kory Garrison, did acquire six and two-thirds incidents in September of 1997, nine months after plaintiff's termination, but was only issued a written warning. However, as noted above, Larrie Horkey was fired under the attendance policy.[5] Based on these facts, and the decisions in both *Cross* and *Cook,* the court finds that evidence of one isolated incident of leniency does not constitute sufficient proof of pretext. According to both *Cross* and *Cook,* the fact that one white employee received favorable treatment is not enough to prove a racial bias on the part of the employer. 945 F.Supp. at 886–87, 988 F.2d at 511–12. This reasoning is especially applicable when, as here, another white employee, Horkey, received the same punishment as the plaintiff, albeit at a later date.

■  Another factor to consider in determining whether the non-discriminatory reason advanced by defendant was pretextual, is whether the person who hired the plaintiff was the same person who fired him. According to *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991), "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." Therefore, in cases where the same person, both hired and fired the employee within a short span of time, there exists a strong inference that discrimination was not the motivating factor for the adverse action. *See id.* The Fourth Circuit found that this strong inference may be over-

---

5.  Plaintiff argues that Horkey was fired nine months after receiving his sixth incident, thus he was treated more favorably. However, after careful review of the record, the court found no evidence to support this allegation.

come; however, the facts of such a case would have to be egregious. *See id.*

In the present case, Tom Searfoss hired and fired Middleton within a ten month time span. Additionally, in June of 1996, only seven months prior to plaintiff's dismissal, Searfoss gave him a favorable evaluation. Considering these facts, the court rejects plaintiff's argument because he alleges a racial animus in his termination, but fails to explain why no such animus existed in the hiring or evaluation process. This court finds that the facts of this case are not so egregious as to overcome the strong inference that Searfoss was not motivated by a discriminatory intent when he terminated Middleton. Given this, the plaintiff has failed to prove that the defendant's non-discriminatory reason for dismissal was pretextual; thus, his disparate treatment claim cannot survive summary judgment.

B. Hostile Work Environment

■ Middleton next claims that he was subjected to a hostile work environment. A hostile environment claim requires that the plaintiff demonstrate that: 1) he was subject to unwelcome conduct; 2) the harassment was based on race; 3) the harassment was sufficiently severe or pervasive to create an abusive work environment; and 4) there is some basis for imposing liability on the employer. *See e.g. Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(discusses hostile work environment in context of sex discrimination); *White v. Federal Exp. Corp.*, 939 F.2d 157 (4th Cir.1991). Plaintiff attempts to meet his burden of proof with little more than bald allegations; therefore, the court finds that summary judgment is appropriate.

■ Middleton alleges that Frito–Lay engaged in a host of harassing activities (*see infra* p. 667), but provides little, if any evidence of actual harassment. Many of plaintiff's allegations are nothing more than unsupported assertions that cannot sustain a prima facie case of discrimination. Even those allegations which find support in the record fail to establish harassment of any kind. Simply because an employer asks an employee to abide by certain rules surely does not create a hostile work environment. Thus, plaintiff's hostile work environment claim must fail.

C. Retaliation

■ Finally, plaintiff claims that he was terminated not because of his attendance record, but because he complained about discrimination and harassment in the work place. To determine whether a retaliation claim should be defeated by summary judgment, the court again must apply the *McDonnell Douglas* test. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). A prima facie case of retaliation requires that the plaintiff show: 1) that he engaged in a protected activity; 2) that the employer took adverse employment action; and 3) that a causal connection existed between the protected activity and the adverse action. *See id.*

■ "As in disparate treatment cases, the burden of establishing a prima facie retaliation case 'is not onerous.'" *Id.* (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.). Given that, the court will assume, without deciding, that the plaintiff has made a prima facie showing. Furthermore, the court finds that the defendant has articulated a non-discriminatory reason for the adverse action, namely that plaintiff violated the attendance policy and had several disciplinary problems; therefore, the burden shifts back to the plaintiff. It is the plaintiff's burden to demonstrate that he would not have been fired "but for" the protected activity. *See Ross*, 759 F.2d at 365–66. Middleton does not meet this burden.

As discussed above in the context of plaintiff's disparate treatment claim, plaintiff accumulated six incidents on his attendance record, enough for termination under Frito–Lay's policy. Furthermore,

he failed to establish that any of these incidents were unwarranted. In addition to his poor attendance, the record reflects that plaintiff was involved in an altercation with a fellow employee and that he was insubordinate—evidenced by the blatant disregard of instructions not to park in restricted parking areas. Defendant also argues that Middleton's complaints of discrimination began in September of 1996 and he was not terminated until January of 1997—four months after his initial complaint. It is telling that the complaint did not coincide with termination, however, the sixth incident of absenteeism did. This supports the argument that the reason for dismissal was poor attendance, not the fact that Middleton complained.

Middleton alleges that he was treated differently than other employees similarly situated to him, in that he was terminated and they were not. This disparate treatment, he argues, stems from the fact that he complained of discrimination while they did not. As addressed above, Middleton was not the only individual fired for poor attendance, and the other employee who was apparently not terminated even. though he had six incidents, did not have the history of disciplinary problems that Middleton had. It was for these reasons that plaintiff's disparate treatment claim failed, and it is for these same reasons that his retaliation claim must fail. Plaintiff simply has not proven that he would not have been fired but for his complaints.

For the foregoing reasons, the motion for summary judgment is granted.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ordered this 27th day of September, 1999 that:

1) the motion for summary judgment be granted; and

2) a copy of this order and foregoing memorandum be sent to the parties.